# ORIGINAL



Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| IN RE MIRANT CORPORATION ERISA LITIGATION | ) CIVIL ACTION<br>) NO.:1:03-CV-1027-~~BBM~~<br>) *RWS*<br>) |

## DEFENDANT T. ROWE PRICE TRUST COMPANY, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant T. Rowe Price Trust Company, Inc. (hereinafter "T. Rowe Price" or "Defendant") moves this Court pursuant to Fed. R. Civ. P. 12(c), for judgment on the pleadings in response to the *In Re Mirant Corporation ERISA Litigation* Complaint (hereinafter "Complaint"). Judgment on the pleadings is appropriate because even if the court accepts all facts in the complaint as true, T. Rowe Price is entitled to judgment as a matter of law on the following grounds:

1. All of Plaintiffs' claims for alleged violations of the Employee Retirement Income Security Act's ("ERISA") fiduciary duty provisions fail because T. Rowe Price was not a fiduciary for purposes of investment in Mirant common stock. The Complaint and the

79

attached plan documents do not allege that T. Rowe Price was a named fiduciary of the Mirant Plans, nor does the Complaint allege T. Rowe Price ever exercised discretionary authority or control over the management and administration of the Mirant Plans, nor does the Complaint allege T. Rowe Price appointed the Mirant Plans' fiduciaries, nor does the Complaint allege T. Rowe Price had any responsibility for selecting the Mirant Plans' investments. Even if we are to assume for the sake of argument that T. Rowe Price was a fiduciary of the Mirant Plans, all of Plaintiffs' breach of fiduciary duty claims as to T. Rowe Price must fail because all of the losses described in the Complaint were purportedly caused by the fiduciary actions or inactions of other Defendants. Plaintiffs' Complaint should be dismissed with prejudice because the documents attached to the Complaint show that there is no causal connection between the Plans' alleged losses, and T. Rowe Price's limited role as the Plans' directed trustee.

2. Putative class representatives James Brown and Greg Waller, Sr., (hereinafter "Brown and Waller" or "Plaintiffs") must also be dismissed because they have also failed to exhaust administrative

remedies available to them under either the Mirant Services Employee

Savings Plan or the Mirant Services Bargaining Unit Employee

Savings Plan (hereinafter "Mirant Plans" or "Plans") prior to bringing

this civil action for breach of fiduciary duty. Exhausting the Plans'

internal claims review procedure is a prerequisite to filing a breach of

fiduciary duty claim under ERISA. *Springer v. Wal-Mart Associates'*

*Group Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990).

This motion is based upon the accompanying Memorandum of Law, and all

pleadings and papers on file in this action. T. Rowe Price respectfully requests the

Court grant judgment on the pleadings in favor of T. Rowe Price, and dismiss all of

Plaintiffs' claims against them with prejudice.

                                        Respectfully submitted,

Dated: _March 23 2004_    By: _Daniel M. Klein (by CRB)_
                                        Daniel M. Klein, Esq.
                                        Georgia Bar No. 425037

Buckley & Klein, LLP
Atlantic Center Plaza, Suite 1100
1180 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 781-1100
Fax: (404) 781-1101

Counsel for Defendant
T. Rowe Price Trust Company, Inc

James P. Baker (Calif. Bar No. 096302-*pro hac vice)*
Heather L. Reinschmidt (Calif. Bar No. 217977-*pro hac vice)*
Orrick, Herrington & Sutcliffe LLP
400 Sansome Street
San Francisco, CA  94111
Telephone:  (415) 392-1122
Fax:  (415) 773-5759

<u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel certifies that the foregoing has been prepared in

Times New Roman (14 point) font, as approved by the Court in LR 5.1B.

BUCKLEY & KLEIN, LLP

Daniel M. Klein
Georgia Bar No. 425037

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE MIRANT CORPORATION ERISA LITIGATION | CIVIL ACTION NO.:1:03-CV-1027-RWS |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing

**Defendant T. Rowe Price Trust Company, Inc.'s Motion for Judgment on the**

**Pleadings** by United States Mail with sufficient postage affixed to ensure First

Class delivery to:

> Lynn Lincoln Sarko
> Keller Rohrback
> 1201 Third Avenue, Suite 3200
> Seattle, WA  98101
>
> Richard S. Schiffrin
> Schriffrin & Barroway
> Three Bala Plaza East, Suite 400
> Bala Cynwyd, PA  19004
>
> Joshua A. Millican
> Office Of Joshua A. Millican
> 44 Broad Street NW, Suite 400
> Atlanta, GA  30303

Gary Gotto
Keller Rohrback
3101 North Central Avenue, Suite 900
Phoenix, AL 85012-2600

Howard Douglas Hinson
Alston & Bird
1201 West Peachtree Street, One Atlantic Center
Atlanta, GA 30309-3424

J. Kirk Quillian
Troutman Sanders
600 Peachtree Street NE, Suite 5200
Atlanta, GA 30308-2216

Dated: _March 23_____, 2004.

                                         _Daniel M. Klein (CNR)___
                                         Daniel M. Klein, Esq.
                                         Georgia Bar No. 425037

Buckley & Klein, LLP
Atlantic Center Plaza, Suite 1100
1180 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 781-1100
Fax: (404) 781-1101

Counsel for Defendant
T. Rowe Price Trust Company, Inc.

# ORIGINAL

MAR 23 2004

*Calleuche*
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| IN RE MIRANT CORPORATION ERISA LITIGATION | ) ) ) ) |

CIVIL ACTION
NO.:1:03-CV-1027-~~BBM~~
RWS

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT T. ROWE PRICE TRUST COMPANY, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS

## I.    INTRODUCTION & STATEMENT OF FACTS

### A.    Introduction

Plaintiffs Brown and Waller bring this action seeking to recover losses allegedly sustained by the Mirant Plans' investments in Mirant common stock. The Complaint is framed as a class action as any recovery is allegedly sought for Plaintiffs, themselves, and a group of "similarly situated" individuals. (Complaint ¶ 67.) Both of the ERISA regulated Mirant Plans became effective on April 2, 2001, concurrent with The Southern Company's ("Southern") termination of its ownership interest in Mirant stock. (Complaint ¶ 18.) Participants in the Mirant Plans (which are both 401(k) plans) could elect to defer part of their compensation

79

to individual accounts in the Plans. Participants in the Plans could direct their investments by choosing among various funds. (Complaint ¶¶ 30, 33; Exh. A, section 8.7, article 8, article IV, as amended by Exh. B, Exh. K, section 8.7, article IV, as amended by Exh. M.)[1] Both Mirant Plans provided that one of the investment funds "shall include the 'Company stock fund'" which invested solely in shares of Mirant Company stock. (Complaint ¶ 33, Exh. A, section 8.1 (MIR 0035); Exh. B (MIR 0096); Exh. K, ¶¶ 2.12, 8.1; Exh. M (MIR 0363)). Mirant's employer matching contributions were invested initially in the Mirant Company Stock Fund, but participants could immediately re-direct the investment of those funds among any of the Mirant Plans' investment options, which had various objectives and risk levels and included growth, balance, stable investment, small cap, blue chip, and other funds. (Complaint ¶ 36; Exh. A ¶ 8.3; Exh. B (MIR0078, 0094-95); Exh. C (MIR0129-32); Exh. K, ¶ 8.3; Exh. L (MIR0334-37); Exh. M (MIR0343-44, 0361-62)).

The Mirant Plans were administered by two committees that were the named fiduciaries of each plan. (Complaint ¶¶ 20, 24, 44; Exh. A ¶¶ 13.1, 13.5; Exh. C (Mir0123); Exh. K, ¶¶ 13.1, 13.5; Exh. L (MIR0327)). The Americas Benefits

---

[1] "Exh.__" refers to the exhibits attached to the Complaint unless otherwise noted herein.

Committee ("ABC") was the "Plan Administrator" that had "the discretionary authority, power and duty to take all actions and to make all decisions necessary or proper to carry out the Plan and to control and manage the operation and administration of the plan." (Complaint ¶¶ 21-22, 24; Exh. A, ¶ 13.4; Exh. K, ¶13.4.) The ABC's members – four Mirant officers or employees – were appointed by Mirant's Board of Directors, also referred to as the Board of Managers. (Complaint ¶¶ 21 and n.3, 44; Exh. A, ¶¶ 2.12; 2.17, 13.1; Exh. K, ¶¶ 2.8, 2.13, 3.1.) The Investment Review Committee ("IRC") (later renamed the Qualified Plans Investment Review Committee) was the named fiduciary responsible for establishing and administering a funding policy, insuring compliance with ERISA, and selecting investment funds for the Mirant Plans. (Complaint ¶¶ 20, 22, 24, 45; Exh. A ¶ 8.1; Exh. B (MIR0096); Exh. H; Exh. K, ¶ 8.1; Exh. M (MIR0363)). The IRC was comprised of three Mirant officers who were designated in the plan documents. (Complaint ¶ 45; Exh. H.) Additionally, T. Rowe Price Trust Company was the Mirant Plans' Trustee, (Complaint ¶ 19; Exh. D), and according to the Mirant Plans, the Trustee "shall have the sole responsibility for the administration of the assets of the Plan as provided in the Trust Agreement . . . ." (Complaint Exh. A, ¶ 13.14; Exh. K, ¶ 13.14.)

**B.     Overview of the Allegations in the Complaint as to T. Rowe Price.**

T. Rowe Price is identified as the Trustee to the Plans at paragraphs 26 and

27 of the Complaint.  From this assertion, Plaintiffs summarily conclude that

T. Rowe Price is a fiduciary of the Plans.  (Complaint ¶ 27.)  Plaintiffs then state:

> "The basis for its fiduciary status, the scope of its
> fiduciary duties, the nature of those duties, and the
> manner in which they were breached are set forth in
> detail below."

(*Id.*)  However, the basis for T. Rowe Price's fiduciary status, the scope of

T. Rowe Price's fiduciary duties, the nature of T. Rowe Price's duties, and the

nature in which T. Rowe Price allegedly breached those duties is never described

in Plaintiffs' 103 page complaint.

T. Rowe Price is next mentioned by name at paragraph 49.[2]  With respect to

T. Rowe Price's fiduciary status paragraph 49 states as follows:

> "As previously stated, T. Rowe Price was the trustee of
> the Plans.  At a minimum, and as described more fully
> below, as the plans' trustee, T. Rowe Price owed the
> plans participants and their beneficiaries the duty to
> monitor the prudence of investment in the Company
> Stock Fund and notified the Committees and the
> participants when investment in the Company Stock
> Fund was clearly no longer prudent."

---

[2] Paragraph 32 simply states that under the terms of the plan and trust that
the contributions to the plan are held in trust by the trustee and invested by the
trustee in the investment options offered by the plans.

Brown and Waller do not describe "more fully below" how or why T. Rowe Price owed the Plans' participants the duty to monitor the prudence of investment in the Company Stock Fund or how or why T. Rowe Price had a duty to notify the Committees and the participants when investment in the Company Stock Fund was no longer prudent.

The next subsection of the Complaint titled "**Nature of Defendant's Fiduciary Duties**," at paragraphs 74 to 79, Plaintiffs recite the statutory commands found at ERISA sections 404 and 405. T. Rowe Price, however, is again not mentioned.

The next subheading of Plaintiffs' Complaint titled, "**Defendants' Fiduciary Status**," and the paragraphs that follow do not mention T. Rowe Price. For example, Paragraph 82 identifies the ABC as the named fiduciary to the plans. This same paragraph identifies U.S. Trust Company, National Association, as the investment manager for the Employee Savings Plan and the Bargaining Unit Plan.[3]

---

[3] U.S. Trust was appointed by the Qualified Plan Investment Review Committee as an investment manager and independent fiduciary for the Employee Savings Plan and the Bargaining Unit Plan in May 2003. (Complaint ¶ 28; Exh. E (MIR 0177-0178)). According to the Investment Management Agreement, between U.S. Trust, Mirant Services, LLC, and the IRC, U.S. Trust was given "the exclusive authority and responsibility to determine whether to continue to offer the Company Stock Fund as an investment option." (*Id.*) U.S. Trust did not make the decision to liquidate the Company Stock Fund until after Mirant had filed for

(Complaint n.9.) Paragraph 83 explains that the plan sponsor, Mirant, designated

the ABC as the Administrator of the Plans, and designated four Mirant employees,

Defendants Booker, Davenport, Smith and Pershing, as the members of the ABC.

The IRC is identified at paragraph 84 as having the responsibility to:

> . . . select and monitor investment options under the Plans
> . . . . According to the Trust Agreement, the IRC had the
> responsibility for 'determining the suitability and
> selecting every investment offered as an option under the
> Plans, *including but not limited to Qualifying Employer
> Securities*.' (*See* Appendix at Exh. D (MIR0164)
> (emphasis added)). According to Plan documents
> 'investment funds shall be selected *from time to time by
> . . . the Investment Review Committee*.' (*See* Appendix at
> Exh. A (MIR0035) (emphasis added)).
>
> Indeed, on an annual basis the IRC met to evaluate the
> funds performance and to determine if they wanted to
> 'close the fund to contributions, offer a replacement fund,
> or add or remove funds as necessary to comply with the
> stated investment guidelines.' (*See* Appendix at Exh. F
> (MIR0187-0189) (emphasis added)). The IRC was made
> up of senior Mirant officers . . . .

(Complaint ¶ 84).

The "Board of Director Defendants" are then identified at paragraph 85.

T. Rowe Price is not a Board of Director defendant. The "*de facto* fiduciaries," are

---

bankruptcy July, 2003. (Complaint ¶ 40.) Inexplicably, plaintiffs have failed to
allege any breach of fiduciary duty claims against U.S. Trust for waiting to
eliminate the Company Stock Fund until July 2003, even though plaintiffs contend
that Mirant stock was clearly an imprudent investment that should have been
eliminated no later than December 2001. (Complaint ¶143-147.)

next identified at paragraph 86. However, T. Rowe Price is not one of them. The only person so identified is Mirant.

Plaintiffs describe the facts they believe demonstrate the imprudence of investing in Mirant stock at paragraphs 90-131. Although Plaintiffs describe various acts by other defendants, T. Rowe Price is never identified or otherwise mentioned in these paragraphs.

The next subheading titled, "**Defendants Knew or Should Have Known That Mirant Stock Was Not a Prudent Investment for the Plans**," that Plaintiffs recount at paragraphs 132-147 describes how the ABC, IRC, Mirant, or other Defendants who had access to material nonpublic information were allegedly required under ERISA to use this insider knowledge so as to prevent the Plans from investing in Mirant stock. T. Rowe Price is not identified as a defendant who had material nonpublic information or who knew or should have known that Mirant stock was an imprudent investment.

T. Rowe Price is conspicuously absent from the allegations found under the next subheading titled, "**Defendants Regularly Communicated with the Plans' participants concerning purchases of Mirant stock, one of the largest single holdings of the Plans yet failed to disclose the imprudence of investment in Mirant stock**." Brown and Waller identify both the ABC and the IRC Defendants

as failing to provide the Plans' participants with "complete and accurate information regarding the Plans' investment options, including the Mirant Stock Fund." (Complaint ¶¶ 148, 149.)  No reference or mention of T. Rowe Price is found in these allegations.

Plaintiffs' next subheading, **"Defendants Suffered From Conflicts of Interest,"** at paragraphs 150-152, identifies Defendants Fuller, Pershing, Hill and Ward, as corporate officers who were also plan fiduciaries thereby allegedly causing each of them to suffer from a conflict of interest.  T. Rowe Price, of course, is not so identified.

The next subheading, titled, **"The Law Under ERISA,"** simply quotes the text of 29 U.S.C. §1104(a) (Complaint ¶ 153) and 29 U.S.C. §1105 (Complaint ¶ 154).

The next subheading in Plaintiffs' Complaint titled, **"Causation,"** at paragraphs 155-158, summarily concludes that all Defendants are responsible for all Plaintiffs' purported losses.  T. Rowe Price is not mentioned or individually identified in these paragraphs nor are any actions or inactions by T. Rowe Price identified as causing Plaintiffs' alleged losses.

The Plaintiffs then assert five claims for relief:

1.    The Committee Defendants, Director Defendants, Southern and

T. Rowe Price breached the fiduciary duty of prudence under ERISA by failing to remove Mirant stock as one of the Plans' investments, (Complaint ¶¶ 159-69);

2.      All Defendants breached a fiduciary duty by failing to monitor the IRC and failing to monitor the prudence of the Stock Funds, (Complaint ¶¶ 170-176);

3.      The Committee Defendants, Ms. Fuller, Mr. Hill, T. Rowe Price and Southern breached a fiduciary duty by failing to provide complete and accurate information to the Plans' participants, (Complaint ¶¶ 177-185);

4.      The Committee Defendants, Director Defendants, T. Rowe Price and Southern breached their fiduciary duties to avoid conflicts of interest by, again, failing to remove Mirant stock as an investment vehicle within the Plans, (Complaint ¶¶ 186-195); and

5.      Plaintiffs assert a claim for co-fiduciary liability against all of the Defendants. (Complaint ¶¶ 192-195.)

**C.      Overview of the Terms of the Plans and Trust Agreements**

T. Rowe Price's limited role is confirmed by the terms of the Plans and their attendant trust agreements.  For example, the Mirant Services Employee Savings Plan provides at Section 8.1 in pertinent part as follows:

*Investment Funds*. The investment funds shall be selected from time to time by the Mirant Services Investment Review Committee...

8.2 Investment of Participant and Profit Sharing Contributions. Each Participant shall direct, at the time he elects to participate in the Plan and at such other times as may be directed by the Investment Review Committee or pursuant to Section 8.6 ["Change in Investment Direction"], that his Elective Employer Contributions Voluntary Participant Contribution Fixed Profit Sharing Contributions and Discretionary Profit Sharing Contributions be invested in one or more of the Investment Funds, provided such investments are made in one percent (1%) increments.

8.3 Investment of Employer Matching Contributions. Employer Matching Contributions shall be invested entirely in the Company Stock Fund and shall remain invested in the Company Stock Fund until such time that the Participant elects to invest all or a portion of the amount credited to his Employer Matching Contribution sub-account in any of the Investment Funds under this Plan as provided in Section 8.5.

Plan Section 8.5 permits a participant to change his investment selections at any time. The Summary Plan Description for the Mirant Services Employee Savings Plan similarly provides:

The selection of investment funds is entirely up to you. You may elect to invest your Elective Employer Contribution Voluntary Participant Contributions Profit-Sharing Contributions and Rollover Contributions in one percent (1%) increments in any or all of the funds.

The same investment selection will apply to Elective

> Employer Contributions, Voluntary Participant
> Contributions and Profit Sharing Contributions...
>
> Employer Matching Contributions made on your behalf
> will be invested in the Company Stock Fund until such
> time as you elect to redirect to another investment fund.

(MIR 0113.)[4]  The Trust Agreement between T. Rowe Price and Southern Energy

Resources, Inc. for the Employee Savings Plan describes the nature of the Trustees

duties as follows:

> In performing its duties hereunder the Trustee shall serve
> solely in the capacity of a directed trustee within the
> meaning of Section 403(a)(1) of ERISA.

(Complaint Exh. D, Section 1.4 (MIR 0158))  Section 1.5 of the Trust further

limits the Trustees' duties.  For example, the Trustee had no duty to "inquire as the

propriety of any investment or distribution under the Plan."  (Id. at section 1.5)

With respect to the Trust Funds investments, the Trust provides in pertinent part as

follows:

> The Named Fiduciary shall be solely responsible for
> directing the trustee as to the investment and disposition
> of the Trust Fund and shall have responsibility for the
> overall diversification of the Trust Fund.  The Trustee

---

[4] Identical language appears in both the Mirant Services Bargaining Unit Employees Savings Plan (Complaint Exh. C, Sections 8.1, 8.2, 8.3 and 8.5 (MIR 0276)), and the Summary Plan Description for the Mirant Services Bargaining Unit Employees Savings Plan (Complaint Exh. L, (MIR 0319)).

> shall invest and reinvest the Trust Fund only as directed
> and the Trustee is specifically prohibited from having or
> exercising any discretion with respect to the investment
> of the Trust Fund.

(Complaint Exh. D, Section 2.1 (MIR 0158)).

The Trust Agreement strictly limits the Trustees investment powers to

following the directions of the named fiduciary. (Complaint Exh. D, Section 2.2

(MIR0158-0159)). Indeed, the Trustee had no power to invest Trust Fund assets as

uninvested assets were to be held as "uninvested" until investment directions are

received. (*Id.*) Similarly "Investment Funds" can only be established at the

direction of the Named Fiduciary. (Complaint Exh. D, Section 2.3 (MIR 0159))

The only other person, besides the Named Fiduciary, who could issue investment

directions were participants:

> 2.4    Participant Instructions. The Named Fiduciary's
> investment direction to the Trustee may represent the
> aggregate of investment instructions of participants with
> respect to the assets in each Participant's Plan account.
> All references in this Agreement to directions or
> instructions provided by the Named Fiduciary shall be
> deemed to include Participant instructions that are
> provided to the Named Fiduciary or its Agent and
> delivered by the Named Fiduciary or its Agent to the
> Trustee. The Named Fiduciary shall have the duty to
> select and monitor all Investment Funds or other
> investment media made available to Participants under
> the Plan.

(Complaint Exh. D (MIR 0159))

As will be shown below, Brown and Waller's conclusory allegations fail because they lack any factual predicate. Plaintiffs' false assertion that T. Rowe Price was an investment fiduciary is directly contradicted by the Complaint's other allegations as well as the attachments to Plaintiffs' own Complaint. T. Rowe Price, according to the Complaint, was not a fiduciary of any stripe to the Mirant Plan. T. Rowe Price is not alleged to be a named fiduciary; a "functional" fiduciary to the Plan; nor do plaintiffs allege T. Rowe Price could appoint the members of the ABC or IRC (who were the named fiduciaries of the Mirant Plans and who had the fiduciary responsibility for the Plans' investments). (Complaint ¶¶ 20-24; Exh. H.) T. Rowe Price is also not alleged to have any responsibility for the Plans' investment selections. ERISA § 405(b), 29 U.S.C. § 1105(b).

**D.    Brown and Waller Have Not Exhausted The Plans' Claims Review Procedure.**

Plaintiffs' fiduciary breach claims are allegedly brought pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). (*See* headings to Complaint ¶¶ 159, 170, 177, and 186.) However, prior to bringing a claim under either ERISA § 502(a)(2) or ERISA § 502(a)(3), a plaintiff must exhaust an ERISA plan's internal claims procedure. *Mason v.*

*Continental Group, Inc.*, 763 F.2d 1219, 1225-27 (11th Cir. 1985), *cert. denied*,

474 U.S. 1087 (1986). Plaintiffs have not exhausted the Plans' claims review

procedure, nor have they alleged that they themselves, or any members of the class

which they purport to represent, have pursued <u>any</u> administrative remedy

whatsoever prior to filing this lawsuit. T. Rowe Price is entitled to judgment on

the pleadings because taking all material facts alleged by Plaintiffs as true,

Plaintiffs are not entitled to relief, since they, and each and every class member

whom they purport to represent, failed to exhaust administrative remedies provided

by the Plans prior to filing this civil lawsuit. Moreover, nowhere in Brown and

Waller's 103 page complaint do they allege they ever filed a claim with the Plan

Administrator, ABC, nor do they allege that doing so would have been futile.

## II.    **ARGUMENT AND CITATION OF AUTHORITY**

"After the pleadings are closed but within such time as not to delay the trial

any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). If

matters are presented outside of the pleadings, the motion shall be treated as one

for summary judgment. *Id.* In rendering judgment on the pleadings a court

considers only the substance of the pleadings and any judicially noticed facts.

*Hawthorne v. Mac Adjustment, Inc.,* 140 F.3d 1367, 1370 (11th Cir. 1998).

However, attachments to pleadings may be considered without converting the

motion into one for summary judgment. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

Judgment on the pleadings is appropriate when no issues of material fact exist and the movant is entitled to judgment as a matter of law. *Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir. 1996). When the motion for judgment on the pleadings challenges the legal sufficiency of the plaintiffs' complaint, "there are no issues of fact because the allegations contained in the pleadings are presumed to be true." *Horsley*, 304 F.3d at 1132; *citing Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) .

### 1.    T. Rowe Price is Not a Fiduciary for Investment Purposes Under the Plans

Under ERISA, there are three ways to acquire fiduciary status: being identified as a named fiduciary in the plan; being identified as a named fiduciary pursuant to a procedure specified in the plan, 29 U.S.C. § 1102(a)(2); or by performing "fiduciary" functions. 29 U.S.C. § 1002(21)(A). *Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec.*, 93 F.3d 1171, 1179 (3d Cir. 1996); *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324-25 (9th Cir. 1985). In *Pegram v. Herdrich*, 530 U.S. 211 (2000), the Supreme Court explained:

> Thus, the statute does not describe fiduciaries simply as
> administrators of the plan, or managers or advisors.
> Instead it defines an administrator, for example, as a
> fiduciary only 'to the extent' that he acts in such a
> capacity in relation to a plan. 29 U.S.C. § 1002(21)(A).
> In every case charging breach of ERISA fiduciary duty,
> then, the threshold question is not whether the actions of
> some person employed to provide services under a plan
> adversely affected a plan beneficiary's interest, but
> whether that person was acting as a fiduciary (that is, was
> performing a fiduciary function) when taking the actions
> subject to complaint.

*Id*. at 225-226.

Here, Brown and Waller have failed to allege that T. Rowe Price is a

"fiduciary" in connection with the actions taken subject to their complaint.

T. Rowe Price is not alleged to be a "named fiduciary" or that it had any

responsibility to act as the Plan Administrator. (Complaint ¶¶ 82-83.) Brown and

Waller do not allege that T. Rowe Price had any responsibility for "determining the

suitability of and selecting every investment offered as an option under the plan,

including but not limited to Qualifying Employer Securities." (Complaint ¶ 84.)

Nor do Brown and Waller allege that T. Rowe Price had any authority to appoint

members of the ABC or IRC. (Complaint ¶ 85.) T. Rowe Price is not identified as

a "functional" fiduciary. (Complaint ¶ 86.) Finally, Brown and Waller do not

identify T. Rowe Price as making representations in a fiduciary capacity to

participants as to the financial and business prospects of Mirant or that T. Rowe

Price made representations about the appropriateness of investing in Mirant stock. (Complaint ¶¶ 87-89.) Plaintiffs' conclusory assertion that T. Rowe Price is a fiduciary finds no support in the Complaint's factual allegations and thus may not be taken as true. *Oxford Asset Mgmt. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir. 2002) ("conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."), *cert. denied,* 2003 U.S. LEXIS 6969 (Oct. 6, 2003).

Under the terms of the Plans, under the terms of the Trusts, as well as the allegations contained in Plaintiffs' own Complaint, T. Rowe Price is not a fiduciary for purposes of the Plans' investments. Fed. R. Civ. P. 10(c) authorizes the incorporation of exhibits to a pleading and makes them an integral part of the pleading for all purposes. *Wright & Miller, Federal Practice and Procedure, Federal Rules of Civil Procedure* § 1327; *Thompson v. Illinois Dep't of Prof'l Regulation,* 300 F.3d 750, 754 (7th Cir. 2002) ("A plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment.")

As a non-"named fiduciary", T. Rowe Price's fiduciary role was quite limited. 29 C.F.R. § 2509.75-8 (FR-16):

> The personal liability of a fiduciary who is not a named

fiduciary is generally limited to the fiduciary functions
which he or she performs with respect to the Plan.

The Eleventh Circuit supports this view of limited fiduciary liability:

> [N]amed fiduciaries and all other fiduciaries are subject
> to the strict fiduciary standards in 29 U.S.C. § 1104, and
> they may be sued for breaching those standards. *See* 29
> U.S.C. § 1109 (fiduciary may be held liable for breaching
> any duty imposed upon fiduciaries by ERISA); *see also*
> IIA Scott on Trusts § 185 (4th ed. 1987) (stating that if
> the holder of the power to direct a trustee is a fiduciary,
> the holder is subject to liability for the exercise or
> nonexercise of that power).   If ERISA did not limit the
> definition of fiduciaries to those with knowledge of their
> authority and discretion, then persons or entities could
> become subject to fiduciary liability without notice.
> Such a result would not only be unfair, but it would also
> disserve a core purpose of ERISA, which is to create a
> system whereby accountable fiduciaries are motivated by
> their accountability to protect the interests of participants
> in ERISA plans.

*Herman v. NationsBank Trust Co. (Georgia),* 126 F.3d 1354, 1366 (11th Cir.

1997); *see also Lowen v. Tower Asset Mgmt.,* 829 F.2d 1209, 1218 (2d Cir. 1987)

("ERISA was deliberately structured so that legal responsibility for management of

ERISA plans would be clearly located.")

Brown and Waller's conclusory allegations that T. Rowe Price is a fiduciary

fail to causally connect the Plans' purported losses to T. Rowe Price's alleged

fiduciary status as is required under ERISA as a prerequisite to a finding of

fiduciary liability.

> Any person who is a fiduciary with respect to a plan who breaches
> any of the responsibilities, obligations, or duties imposed upon
> fiduciaries by this title shall be personally liable to make good to such
> plan any losses to the plan resulting from each such breach....

ERISA §409(a), 29 U.S.C. 1109(a); *see also, Friend v. Sanwa Bank Cal.*, 35 F.3d

466, 469 (9th Cir. 1994) ("ERISA holds a trustee liable for a breach of fiduciary

duty only to the extent that losses to the plan result from the breach. 29 U.S.C.

§1109"); *citing Brandt v. Grounds*, 687 F.2d 895, 898 (7th Cir. 1982) (Section

1109 "clearly indicates that a causal connection is required between the breach of

fiduciary duty and the losses incurred by the plan"). Moreover, Plaintiffs'

allegations based on "information and belief" cannot trump the express terms of

the Plans and the express terms of the trust agreements that state T. Rowe Price

was not a fiduciary for purposes of the Plans' investments. *Crowley v. Corning,*

*Inc.*, 234 F. Supp. 2d 222, 228-229 (W.D.N.Y. 2002); *In re Williams Cos. ERISA*

*Litig.*, 271 F. Supp. 2d 1328, 1339 (N.D. Okla. 2003). Because these conclusory

assertions about T. Rowe Price's status are insufficient as a matter of law, T. Rowe

Price must be dismissed.

### 2.    As A Directed Trustee T. Rowe Price Had No Duty To Monitor The Plans' Investments.

ERISA Section 403(a)(1), 29 U.S.C. § 1103(a)(1) specifies a limited role for

directed trustees, and exculpates directed trustees from liability in following the

investment directions of the named fiduciary (here the IRC and the Plans'

participants) so long as those directions are "made in accordance with the terms of

the plan" and are "not contrary to" ERISA.  ERISA's legislative history makes

clear that a directed trustee must follow the directions of the named fiduciary

"unless it is clear on its face that the actions to be taken under those directions

would be prohibited by [ERISA's] fiduciary responsibility rules . . . . *See* H.R.

Conf. Rep. No. 93-1280, at 298 (1974).  As such courts have repeatedly held that a

directed trustee is not required to exercise its independent judgment in deciding

whether to invest employee funds as directed, but, rather, is required to execute

them without further inquiry unless they are improper on their face.

> [ERISA allows a plan to allocate authority and] control
> over [plan] assets [to parties other than trustees, if that
> allocation fits one of three exceptions] because of the
> third exception, to the extent that a plan allocates the
> authority to manage and control plan assets to a named
> fiduciary, the trustee becomes 'subject to proper
> directions of such fiduciary which are made in
> accordance with the terms of the plan and which are not
> contrary to this chapter . . .' *Id.* § 1103(a)(1) (West
> 1985).  In other words, insofar as a trustee acts at the
> direction of a named fiduciary in accordance with the
> terms of the plan and ERISA's requirements, he is not
> subject to the fiduciary requirement in § 1104(a) to act
> prudently. *See Maniace v. Commerce Bank of Kansas
> City, N.A.*, 40 F.3d 264, 267 (8th Cir. 1994) (holding that

> directed trustee was not acting as a fiduciary in following
> named fiduciary's direction and did not need to weigh the
> merits of those directions).

*Herman v. Nationsbank Trust Co.*, 126 F.3d 1354, 1361-62 (11th Cir. 1997), *cert.*

*denied*, 525 U.S. 816 (1998).  Similarly in *Beddall v. State St. Bank & Trust Co.*,

137 F.3d 12 (1st Cir. 1998), the First Circuit refused to impose general fiduciary

status on a directed trustee:

> "It is beyond *cavil* that when the TAC [("The
> Administrative Committee")] appoints an investment
> manager for designated assets, the Agreement shifts all
> significant discretion and control over those assets to the
> investment manager and relegates the trustee to the role
> of an administrative functionary.  With section 6
> velivolant the Bank's remaining powers are ministerial.
> They involve such details as checking whether
> Hawthorne's instructions are in a writing signed by an
> authorized person and issuing periodic reports to [The
> Administrative Committee] *anent the Fund's status*.
> Although the Bank arguably may refuse to follow
> instructions that are not in an acceptable format, this
> negative discretion lies well within the administrative
> sphere, and its existence does not transform the Bank into
> a fiduciary vis-à-vis the affected assets.  [Footnote
> omitted]  *See Arizona State Carpenters Pension Trust
> Fund v. Citibank*, 125 F.3d 715, 722 (9th Cir. 1997).
>
> We need not paint the lily.  The complaint acknowledges
> that [The Administrative Committee] appointed
> Hawthorne to manage its real estate investments.  In that
> circumstance, the trust document, read as a whole,
> divests the Bank of any and all management authority or
> discretionary control over those assets.  Whatever the

> Bank's powers may have been in the absence of a duly
> appointed investment manager, no fiduciary
> responsibility in regard to the valuation of the Plan's real
> estate holdings survived the appointment.

*Beddall,* 137 F.3d at 21.

Plaintiffs have not alleged that the directions T. Rowe Price received were improper on their face or that these directions were not made in accordance with the terms of the plan. Nor have Brown and Waller alleged that the investment directions received by T. Rowe Price were contrary to ERISA. Rather, Plaintiffs have simply asserted in Count 2 that T. Rowe Price had a duty to monitor the Plans' investments in Mirant Stock. (Complaint ¶¶ 170-176.) Nothing in ERISA imposes a duty on a directed trustee to monitor a plan's investment in a particular asset. The purported "duty to monitor," to the extent it may exist, flows from the authority to appoint plan fiduciaries. *In Re Enron Corp. Sec. Derivative & ERISA Litig.,* 284 F. Supp. 2d 511, 553-54 (S.D. Tex. 2003) (collecting cases). Some courts refuse to find a "duty to monitor" and indicate that while the power to appoint fiduciaries results in a limited duty, that duty "can extend only to those [appointment] acts." *Crowley v. Corning, Inc.,* 234 F.Supp. 2d 222, 230 (W.D.N.Y. 2002) (internal quotations and citation omitted). Other courts have stated that the "duty to monitor" cannot confer fiduciary status on the appointing entity. *In re Worldcom, Inc. ERISA Litig.,* 263 F. Supp. 2d 745, 760-61 (S.D.N.Y.

2003).

The plans' investment funds were selected by the Mirant Services Investment Review Committee. (Complaint Exh. A, Section 8.1 (MIR 0035)). Section 1.4 of the Trust Agreement states that T. Rowe Price shall serve as a directed trustee. (Complaint Exh. D (MIR 0158)). Section 1.5 of the Trust states that the trustee had no duty to "inquire as to the propriety of any investment or distribution under the plan." (*Id.*) With respect to the trust funds investment, the trust provides that the "named fiduciary" shall be solely responsible for directing the trustee as to the investment and disposition of the trust fund. (Trust § 2.1, MIR 0158.) The Trust Agreement strictly limits T. Rowe Price's investment powers to following the directions of the named fiduciary or following the investment directions of participants. (Complaint Exh. D, Sections 2.2, 2.4 (MIR 0158-159)).

> [I]n every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interests, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.

*Pegram*, 530 U.S. at 226; *accord, Local Union 2134, United Mine Workers v. Powhatan Fuel, Inc.*, 828 F.2d 710, 714 (11th Cir. 1987); *Sommers Drug Stores*

*Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc.*, 793 F.2d 1456,

1459-60 (5th Cir. 1986); *Leigh v. Engle*, 727 F.2d 113, 133 (7th Cir. 1984);

*Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1158 (3d Cir. 1990); *Coleman v.*

*Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992); 29 C.F.R. § 2509.75-8,

FR-16 (1991).

Plaintiffs have not made any allegation that T. Rowe Price was appointed to

act as an investment fiduciary under the terms of the Plan or Trust.  No allegations

state that T. Rowe Price failed to follow the investment directions of the named

fiduciaries or of the participants in violation of ERISA.  Nor have Brown and

Waller alleged that the plan document or Trust agreement gave T. Rowe Price any

investment selection responsibilities.

> [A person should not be attributed fiduciary status under
> ERISA] and held accountable for performance of the
> strict responsibilities required of him in that role, if he is
> not clearly aware of his status as a fiduciary:  If ERISA
> did not limit the definition of fiduciaries to those with
> knowledge of their authority and discretion, then persons
> or entities could become subject to fiduciary liability
> without notice.  Such a result would not only be unfair,
> but it would also disserve a core purpose of ERISA,
> which is to create a system whereby accountable
> fiduciaries are motivated by their accountability to
> protect the interests of participants in ERISA plans.

*ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1015 (11th Cir. 2003).[5]

The Plans were both designed to hold Mirant stock along with other

investment options.  T. Rowe Price's execution of investment directions from the

IRC and the investment directions from the Plans' participants concerning when to

buy or sell Mirant stock do not make T. Rowe Price an investment fiduciary.

Reduced to is essence Brown and Waller's theory is that the directions T. Rowe

Price received from the IRC and the Plans' participants were improper on their

face.  However, to show T. Rowe Price followed an improper direction, Plaintiffs

must show T. Rowe Price knew the investment directions were contrary to the

Plans' terms (and they were not) or that the decision to retain Mirant stock as an

---

[5] Even if we assume just for the sake of argument T. Rowe Price was the named fiduciary in connection with the purchase or retention of Mirant company stock, what standard of review should apply?  A named fiduciary's decision to remain invested in employer securities is to be reviewed under the "abuse of discretion" standard of review.  *Moench v. Robertson*, 62 F.3d 553, 571 (3d Cir. 1995); *Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995).  The prudence of a fiduciary's action or inaction is "evaluated at the time of the investment without the benefit of hindsight."  *Metzler v. Graham*, 112 F.3d 207, 209 (5th Cir. 1997).  To overcome this presumption of reasonableness, plaintiffs must prove a prudent fiduciary acting under similar circumstances would have made a different investment decision.  *Moench*, 62 F.3d at 571; *see also, In re Hemmeter*, 242 F.3d 1186, 1191(9th Cir. 2001) (presumption exists that the holding of company stock in a plan designed to hold such assets does not violate ERISA's prudency rules.) Thus, plaintiffs bear the burden to prove that (i) the named fiduciary abused its discretion and (ii) a prudent fiduciary acting under similar circumstances would have made a different investment decision.  *Moench*, 62 F.3d at 571-72.

investment vehicle constituted a clear abuse of discretion by the IRC. The facts as

pled by Brown and Waller, however, defeat this claim as to T. Rowe Price.

The factual allegations that Plaintiffs point to in support of their claim that

Mirant stock was an imprudent Plan investment - namely, the alleged improper

energy trading practices and accounting irregularities engaged in and concealed by

Mirant which served to inflate the share price of Mirant stock, (Complaint ¶¶ 92,

98, 126, 132) are not alleged by Plaintiffs to have been known by T. Rowe Price.

Thus, regardless of the veracity of these allegations or their relevance to Plaintiffs'

claims, they cannot be said to have caused, nor could they have caused T. Rowe

Price to believe that the decision of the IRC to maintain Mirant stock as an

investment alternative in the Plans constituted an abuse of discretion.[6] T. Rowe

---

[6] As observed by the Mirant Defendants in their Motion to Dismiss (Dkt. #68), Plaintiffs have failed to demonstrate that the IRC engaged in an abuse of discretion by the way it responded to the dimunition in value of Mirant stock. To the contrary, the facts show:

- The operating revenues of Mirant Corp., and its earnings per share increased from fiscal year 2000 to fiscal year 2001. (Mirant Defendants Motion to Dismiss at p. 28, Exh 7)

- Although the share price of Mirant stock declined in 2002, the decline was consistent with the downturn in the economy generally and, in particular, the energy trading business. (*Id.* at p.29, Exh. 8)

- An independent fiduciary (U.S. Trust) was retained to render an opinion as to the prudency of Mirant stock and, only after the announcement of Mirant's bankruptcy plans, did that same fiduciary decide to override the

Price could not have acted on information it did know about – Plaintiffs allege it was being concealed by Mirant. (Complaint ¶¶ 92, 98, 126) Under such circumstances, T. Rowe Price did what it was required to do under the law - it followed the investment directions of the Plans' named fiduciaries.

### 3.    T. Rowe Price Cannot Be Held Liable as a Co-Fiduciary.

Aside from Plaintiffs' fallacious assertion that T. Rowe Price had a fiduciary duty to monitor the Plans' investment in Mirant Stock, Plaintiffs only other theory that T. Rowe Price is liable for the Plans' losses arises from their co-fiduciary assertions in Count 5. (Complaint ¶¶ 192-195.) The language of ERISA Section 405(b), 29 U.S.C. § 1105(b), that sets forth the standards for co-fiduciary liability, however, eviscerates this claim. Section 405(b) provides that "if the assets of the plan are held by two or more trustees, each shall use reasonable care to prevent a co-trustee from committing a breach." Moreover, ERISA § 405(b) by its terms clearly excludes directed trustees from the duty of reasonable care. First, the introductory language of Section 405(b) states that this section is to apply "**except as provided in Section 403 (a)(1).**" 29 U.S.C. 1105(b) (the section defining the duties of a directed trustee) (emphasis added). Second, ERISA Section

---

Plans' terms and removed the stock as an option in the Plan. (*Id.* at pp.29-30; Complaint ¶40)

405(b)(3)(B) reemphasizes that **"[N]o trustee shall be liable under this subsection for following instructions referred to in Section 403(a)(1)."** *Id.* (Emphasis added).

The exclusion of directed trustees from liability under ERISA § 405(b) indicates that a directed trustee, like T. Rowe Price here, is not subject to a duty of independent inquiry or a duty to monitor when the direction is made by a named fiduciary or by a plan participant. It is not disputed that under the terms of the Plans and the terms of the Trusts that T. Rowe Price was obliged to follow the directions of the IRC and the Plans' participants. ERISA provides that where plans give participants control over their own accounts "the trustee is free from liability arising out of participants' decisions over their accounts." *Herman,* 126 F.3d at 1366.

Because Plaintiffs' alleged duty to monitor in Count II, and because Plaintiffs' alleged co-fiduciary liability and duty to monitor theory in Count 5, have no basis in the facts as pled or in the law, these claims must be dismissed as to T. Rowe Price.

    **4.    Plaintiffs' Claims For Fiduciary Breach Must Be Dismissed Because They Have Failed to Exhaust The Plan's Claims Review Procedure.**

Although the text of ERISA does not expressly mention the exhaustion

doctrine, every federal circuit court of appeal requires a claimant to exhaust the

Plan's claims review procedure before filing suit. *Mason*, 763 F.2d at 1226-27;

*Simmons v. Willcox*, 911 F.2d 1077, 1081 (5th Cir. 1990); *Meza v. General Battery*

*Corp.*, 908 F.2d 1262, 1279 (5th Cir. 1990); *Denton v. First Nat'l Bank*, 765 F.2d

1295, 1301 (5th Cir. 1985); *McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253

(10th Cir. 1998); *Amato v. Bernard*, 618 F.2d 559, 566-68 (9th Cir. 1980);

*Anderson v. Alpha Portland Indus., Inc.*, 752 F.2d 1293 (8th Cir. 1985) (en banc),

*cert. denied*, 471 U.S. 1102 (1985); *Kross v. Western Elec. Co.*, 701 F.2d 1238,

1244, 1246 (7th Cir. 1983); *Weiner v. Klais & Co.*, 108 F.3d 86 (6th Cir. 1997);

*Berger v. Edgewater Steel Co.*, 911 F.2d 911 (3d Cir. 1990); *Davis v.*

*Featherstone*, 97 F.3d 734, 737 (4th Cir. 1996); *Leonelli v. Pennwalt Corp.*,

887 F.2d 1195 (2d Cir. 1989); *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d

821 (1st Cir. 1988), *cert. denied*, 488 U.S. 909 (1988).

The exhaustion requirement serves several important policies. As the

Eleventh Circuit has explained:

> Compelling considerations exist for plaintiffs to exhaust
> administrative remedies prior to instituting a lawsuit.
> Administrative claim-resolution procedures reduce the
> number of frivolous lawsuits under ERISA, minimize the
> cost of dispute resolution, enhance the plan's trustees'
> ability to carry out their fiduciary duties expertly and
> efficiently by preventing premature judicial intervention
> in the decisionmaking process, and allow prior fully

> considered actions by pension plan trustees to assist
> courts if the dispute is eventually litigated. In addition,
> imposing an exhaustion requirement in the ERISA
> context appears to be consistent with the intent of
> Congress that pension plans provide intrafund review
> procedures.

*Mason*, 763 F.2d at 1227 (citations omitted).

Other circuits have agreed, explaining that "prior fully considered actions by . . . trustees interpreting their plans and perhaps also further refining and defining the problem in given cases, may well assist the courts when they are called upon to resolve the controversies." *Amato*, 618 F.2d at 568 (alteration in original). "[I]mplementing the exhaustion requirement enhances the ability of plan fiduciaries to expertly and efficiently manage their plans by preventing premature judicial intervention and... fully considered actions by plan fiduciaries may assist the courts when they must resolve controversies." *Powell v. AT&T Communs.*, 938 F.2d 823, 826 (7th Cir. 1991).

A number of the federal circuit courts of appeal, including the Eleventh Circuit, require participants, like Brown and Waller to exhaust a plan's internal review procedure prior to bringing a claim for breach of fiduciary duty under either ERISA § 502(a)(2) or ERISA § 502(a)(3). *See Powell*, 938 F.2d at 825-26 (listing five circuits, including the Eleventh, which require plan remedies to be exhausted prior to filing a lawsuit alleging a breach of fiduciary duty, and holding that the

"strong federal policy encouraging private resolution of ERISA–related disputes mandates the application of the exhaustion doctrine to **statutory claims** for breach of a fiduciary duty under ERISA") (emphasis added); *see, e.g., Curry v. Contract Fabricators, Inc. Profit Sharing Plan*, 891 F.2d 842, 846 (11th Cir. 1990); *Simmons*, 911 F.2d at 1081; *Leonelli*, 887 F.2d at 1199; *Makar v. Health Care Corp.*, 872 F.2d 80, 83 (4th Cir. 1989); *Drinkwater*, 846 F.2d at 825-26.

The exhaustion requirement applies with equal force to all fiduciary breach claims – not just claims for benefits "disguised" as breach of fiduciary duty claims. In *Counts v. American Gen. Life & Accident Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997), the 11th Circuit, ruled that exhaustion of plan remedies applies to <u>all</u> claims brought under ERISA § 502 – including claims for breach of fiduciary duty under ERISA § 502(a)(2) or ERISA § 502(a)(3) (or "statutory violation" claims as they are sometimes labeled). Mr. Counts claimed his employment was terminated to deprive him of his right to long term disability benefits. The Disability Committee wrote Mr. Counts advising him that his long-term disability benefits and his employment was ending. *Id.* at 107. He was told that he could appeal the decision by sending a written request within 60 days following his receipt of the notice. Fifteen months later Mr. Counts filed his complaint alleging the company had wrongfully discontinued his LTD benefits and that his employment was terminated

for the purpose of interfering with his rights under the LTD plan. *Id.* AGLA

moved for summary judgment on the ground that Counts failed to exhaust his

administrative remedies. *Id.* at 108. In affirming the District Court's grant of

summary judgment, the 11th Circuit explained:

> We have consistently stated that the exhaustion
> requirement applies both to actions to enforce a statutory
> right under ERISA and to actions brought to recover
> benefits under a plan. *Springer v. Wal Mart Associates'
> Group Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990);
> *Mason v. Continental Group, Inc.*, 763 F.2d 1219, 1225-
> 27 (11th Cir. 1985). Counts asks us to depart from this
> precedent and hold, along with several of our sister
> circuits, that exhaustion is not required for claims as
> statutory violation. *See Held v. Manufacturers Hanover
> Leasing Corp.*, 912 F.2d 1197, 1205 (10th Cir. 1990);
> *Zipf v. American Tel. & Tel. Co.*, 799 F.2d 889, 891-94
> (3rd Cir. 1986); *Amaro v. Continental Can Co.*, 724 F.2d
> 747, 750-53 (9th Cir. 1984); *but see Lindeman v. Mobil
> Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996) (rationale for
> exhaustion applies equally to claims for benefits and
> claims based upon ERISA itself). However, even if we
> agreed with Counts' position, this panel lacks the
> authority to overrule prior panel decisions of this court.
> *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th
> Cir. 1981) (en banc). Under controlling precedent,
> Counts was required to exhaust administrative remedies
> for all of his ERISA claims.

*Id.* at 109.

Similarly in *Perrino v. Southern Bell Tel. & Tel. Co.*, 209 F.3d 1309 (11th

Cir. 2000) the court ruled that even where an employer fails to comply with

- 32 -

ERISA's technical requirements, such as creating a summary plan description or delineating formal claims procedures, it did not excuse class of former employees from their duty, under ERISA, to exhaust administrative remedies. Although *Southern Bell* failed to issue a summary plan description for termination benefits, its collective bargaining agreement contained a detailed provision explaining the terms and conditions under which employees could receive termination allowances as well as a detailed grievance and arbitration procedure available for any employment-related grievance:

> Our prior precedent makes clear that the exhaustion requirement for ERISA claims should not be excused for technical violations of ERISA regulations that do not deny plaintiffs meaningful access to an administrative remedy procedure through which they may receive an adequate remedy. . . .
>
> * * *
>
> This approach conforms with the logic of our exhaustion doctrine in which we apply the exhaustion requirement strictly and recognize narrow exceptions only based on exceptional circumstances. *See Counts*, 111 F.3d at 108; *Springer*, 908 F.2d at 899; *Curry*, 891 F.2d at 846-47

*Id*. at 1317-1318.

The rule announced by the Eleventh Circuit in *Mason* has been repeatedly reaffirmed both by the Eleventh Circuit itself, as well as the District courts within

this Circuit.  In its 2000 decision in *Perrino*, the Eleventh Circuit again

acknowledged and approved its position adopted in *Mason*.  209 F.3d at 1315.

In *Kirkland v. SSL Ams. Inc.*, 263 F. Supp. 2d 1326 (M.D. Ala. 2003), the

plaintiff sought severance pay benefits without first exhausting the plan's claims

review procedure.  Mr. Kirkland admitted that he failed to exhaust the plan's

claims review procedure but argued that it would have been futile for him to do so.

In rejecting the futility argument, the Court explained:

> 'A plaintiff must make a clear and positive showing of
> futility before the court may suspend the exhaustion
> requirement.'  *Engelhardt v. Paul Revere Life Ins. Co.*,
> 77 F.Supp. 2d 1226, 1233 (M.D. Ala. 1999) (*quoting
> Springer v. Wal-Mart Assoc. Group Health Plan*, 908
> F.2d 897, 899 (11th Cir. 1990)).  The court concludes
> Kirkland has failed to meet this burden.
>
> Kirkland has made no attempt to pursue an
> administrative claim.  His attorneys have knowledge of
> the proper procedure to follow to file an administrative
> claim, yet they have not filed a claim.  There is no
> evidence that SSL-US will summarily deny Kirkland's
> claims without giving him an adequate opportunity to
> explain his position, especially in light of the Eleventh
> Circuit's decisions in *Bedinghaus & Harris v. Pullman
> Standard, Inc.*, 809 F.2d 1495 (11th Cir. 1987).
> [Footnote omitted.]  *See Stephenson v. Provident Life &
> Accident Ins. Co.*, 1 F. Supp. 2d 1326 (N.D. Ala. 1998)
> (de Ment, J.) (explaining that any argument alleging that
> a company 'made up its corporate mind to ignore its own
> definition [of eligibility] and to cast about for every
> conceivable, illogical, unreasonable reason to attempt to
> justify its decision to deny . . . benefits' must be

> supported by evidence). Any review of an administrative
> claim filed by Kirkland will have to address these
> precedents.

*Id.* at 1351 (some alteration in original).

As support for their argument, Brown and Waller may attempt to overwhelm

the Eleventh Circuit authority described above by invoking contrary decisions

from other Circuit courts of appeal. However, courts within the Eleventh Circuit

are obliged to follow Eleventh Circuit precedent even where other Circuits hold to

the contrary. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981)

(en banc).

Brown and Waller failed to make any attempt to resolve their grievances

through administrative channels provided by the Plan. Instead, they first filed a

lawsuit in federal court. Brown and Waller's actions are in direct violation of the

Eleventh Circuit's rule that a party seeking a remedy for an alleged fiduciary

breach under ERISA §§ 502(a)(2) or 502(a)(3) must exhaust administrative

remedies provided by the plan prior to filing such a lawsuit. Because Brown and

Waller's failure to exhaust administrative remedies bars their claims, their

Amended Complaint should be dismissed with prejudice.

5.    **Plaintiffs Are Not Excused From Exhausting Plan Remedies Because They Have Failed To Plead or Present Evidence of Futility.**

Plaintiffs are not excused from exhausting administrative remedies because they have not made "a clear and positive showing of futility" as is required by the Eleventh Circuit before exhaustion will be deemed futile. *Springer*, 908 F.2d at 907; *Kirkland*, 263 F. Supp. 2d at 1351 ("A plaintiff must make a 'clear and positive showing of futility' before the court may suspend the exhaustion requirement.") (citation omitted). Not only have Plaintiffs not met their burden of a "clear and positive showing" that exhaustion of the Mirant Plan's review procedures would be futile , they have made no showing at all because they did not plead futility.

Plaintiffs have not plead futility, nor have they attempted in any way to provide the evidence necessary to prove it. *See Springer*, 908 F.2d at 907 (noting plaintiff's failure to plead futility in rejecting plaintiff's futility claim); *quoting Makar*, 872 F.2d at 83 ("bare allegations of futility are no substitute for the 'clear and positive' showing of futility . . . required before suspending the exhaustion requirement.") (alteration in original). Because Plaintiffs have failed to allege futility or to otherwise meet their burden of persuasion, exhaustion of plan remedies cannot be excused in this case.

6.    **Plaintiffs' Failure to Exhaust the Plan's Administrative Claim Procedures Warrants Dismissal of Their Claims With Prejudice.**

Plaintiffs have failed to allege that they, or any other Plan participant whom they purport to represent, has sought any administrative remedy for the harms claimed. Failing to plead exhaustion can be fatal in ERISA cases. *See Byrd v. MacPapers*, Inc. 961 F.2d 157 (11th Cir. 1992) (district court did not abuse its discretion in dismissing plaintiff's claim for failure to plead exhaustion of administrative remedies); *Variety Children's Hosp. v. Century Medical Health Plan*, 57 F.3d 1040, 1042 & n.2 (11th Cir. 1995) (dismissal of plaintiff's ERISA claim proper where plaintiff "neither pleaded nor recited facts showing that it had exhausted its administrative remedies under the plan" or pleaded "that exhaustion is waived because it would be futile"); *Leggett v. Provident Life & Accident Ins. Co.*, No. 6:02-cv-1032-Orl-22KRS, 2004 U.S. Dist. LEXIS 1866, at *45-46 (M.D. Fla. Feb. 9, 2004) ("[I]n order to raise the futility exception, [plaintiff] was required to have pled it."); *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 651 (7th Cir. 1996) (affirming a district court's decision granting summary judgment against a party for failing to exhaust rather than imposing a stay and allowing the plaintiff to exhaust her internal remedies); *Denton v. First Nat'l Bank*, 765 F.2d 1295, 1305 (5th Cir. 1985) (dismissing with prejudice for failure to exhaust administrative

remedies); *Jones v. State Wide Aluminum, Inc.*, 246 F. Supp. 2d 1018, 1026 (N.D. Ind. 2003) (dismissal with prejudice appropriate where the law and the plan itself both served to put the claimant on notice that exhaustion of internal remedies was required); *See also, Diaz v. United Agric. Employee Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1480 (9th Cir. 1995) (summary judgment appropriate where plaintiff failed to exhaust ERISA administrative remedies); *D'Amico v. CBS Corp.*, 297 F.3d 287, 293 (3d Cir. 2003) (summary judgment granted against party for failing to exhaust administrative remedies); *Sarraf v. Standard Ins. Co.*, 102 F.3d 991, 992 (9th Cir. 1996) (same).

Taking all facts as pled by Plaintiffs as true, they have failed to exhaust administrative remedies provided and articulated by the Plan. The law in the Eleventh Circuit is clear and well established that a party seeking a remedy under ERISA must exhaust all plan remedies prior to filing suit. *See Perrino*, 209 F.3d at 1315; *Counts*, 111 F.3d at 108; *Springer*, 908 F.2d at 899; *Mason*, 763 F.2d at 1225-27. On a reading of the Complaint in a light most favorable to Plaintiffs, it is undisputed that they failed to plead exhaustion, failed to plead that they made any effort to determine what administrative remedies were available to them, and failed to plead that they initiated any type of level of administrative review. The Complaint shows complete disregard for the established rule of this Circuit. T.

Rowe Price, therefore, respectfully requests that the Court grant T. Rowe Price's

Motion for Judgment on Pleadings and dismiss Plaintiffs' Complaint with

prejudice.

## III.    **CONCLUSION**

Judgment on the pleadings in favor of T. Rowe Price is appropriate because

any fair reading of Plaintiffs' Complaint reveals that their breach of fiduciary duty

claims are legally deficient. Plaintiffs have simply failed to allege any factual

support for their conclusory allegations that that T. Rowe Price was acting as an

ERISA fiduciary with respect to the conduct alleged to constitute a fiduciary

breach under ERISA. Moreover, the law of the Eleventh Circuit is settled that

Plaintiffs may not pursue their purported fiduciary breach claim against T. Rowe

Price without first exhausting the Plan's claims review procedure. Plaintiffs do not

plead that they have exhausted the Mirant Plan's administrative review procedures

nor do plaintiffs plead an exception to the exhaustion requirement. These

deficiencies are fatal to plaintiffs claims. Accordingly, T. Rowe Price respectfully

requests this Court dismiss all of Plaintiffs' claims against them with prejudice.

Respectfully submitted,

Dated: _March 27, 2004_    By: _Daniel M Klein (cnk)_
                          Daniel M. Klein, Esq.
                          Georgia Bar No. 425037

Buckley & Klein, LLP
Atlantic Center Plaza, Suite 1100
1180 West Peachtree Street
Atlanta, GA  30309
Telephone:  (404) 781-1100
Fax:  (404) 781-1101


Counsel for Defendant
T. Rowe Price Trust Company, Inc

James P. Baker (Calif. Bar No. 096302-*pro hac vice*)
Heather L. Reinschmidt (Calif. Bar No. 217977-*pro hac vice*)
Orrick, Herrington & Sutcliffe LLP
400 Sansome Street
San Francisco, CA  94111
Telephone:  (415) 392-1122
Fax:  (415) 773-5759

CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that the foregoing has been prepared in

Times New Roman (14 point) font, as approved by the Court in LR 5.1B.

BUCKLEY & KLEIN, LLP


Daniel M. Klein
Georgia Bar No. 425037

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE MIRANT CORPORATION<br><br>ERISA LITIGATION | CIVIL ACTION<br><br>NO.:1:03-CV-1027-RWS |

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day served a copy of the foregoing

**Memorandum of Law in Support of Defendant T. Rowe Price Trust**

**Company, Inc.'s Motion for Judgment on the Pleadings** by United States Mail

with sufficient postage affixed to ensure First Class delivery to:

Lynn Lincoln Sarko
Keller Rohrback
1201 Third Avenue, Suite 3200
Seattle, WA  98101

Richard S. Schiffrin
Schriffrin & Barroway
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA  19004

Joshua A. Millican
Office Of Joshua A. Millican
44 Broad Street NW, Suite 400
Atlanta, GA  30303

Gary Gotto
Keller Rohrback
3101 North Central Avenue, Suite 900
Phoenix, AL  85012-2600

Howard Douglas Hinson
Alston & Bird
1201 West Peachtree Street, One Atlantic Center
Atlanta, GA  30309-3424

J. Kirk Quillian
Troutman Sanders
600 Peachtree Street NE, Suite 5200
Atlanta, GA  30308-2216

Dated: _____, 2004.

_____
Daniel M. Klein, Esq.
Georgia Bar No. 425037

Buckley & Klein, LLP
Atlantic Center Plaza, Suite 1100
1180 West Peachtree Street
Atlanta, GA  30309
Telephone:  (404) 781-1100
Fax:  (404) 781-1101

Counsel for Defendant
T. Rowe Price Trust Company, Inc.

- 43 -