

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION



FILED IN CLERK'S OFFICE
D.C. Atlanta

MAY 26 2004

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

| | |
|---|---|
| IN RE MIRANT CORPORATION ERISA LITIGATION | ) CIVIL ACTION<br>)<br>) NO.:1:03-CV-1027-~~BBM~~ RWS<br>)<br>) |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANT T. ROWE PRICE TRUST COMPANY, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS

## I.    **INTRODUCTION**

Plaintiffs James Brown's and Greg Waller, Sr.'s ("Plaintiffs" or "Brown and Waller") 103 page Complaint omits any reference to the alleged scope of T. Rowe Price Trust Company, Inc.'s ("T. Rowe Price") fiduciary duties, the nature of those duties, how T. Rowe Price allegedly breached its fiduciary duties, or why Brown and Waller were injured by T. Rowe Price's conduct. Even if this Court assumes all of the allegations in Plaintiffs' Complaint are true, there is no cognizable breach of fiduciary duty claim against T. Rowe Price upon which this court can grant relief. Their 103 page Complaint contains detailed allegations of misrepresentation and deceit by other defendants. (*See* Complaint ¶¶ 90-131.) According to Plaintiffs, they continued to invest in Mirant stock due to the affirmative misrepresentations made by certain Defendants. T. Rowe Price, however, is never mentioned or even referenced in any of these allegations.

Realizing they have made no viable claim as to T. Rowe Price, Brown and Waller attempt to save their Complaint by making new allegations against T. Rowe Price in their Opposition to Defendant T. Rowe Price's Motion for Judgment on the Pleadings ("Opposition"). However, "a plaintiff cannot amend a complaint through statements in a brief." *Payne v. Ryder Sys. Long Term Disability Plan*, 173 F.R.D. 537, 540 (M.D. Fla. 1997) Plaintiffs also mistakenly ask this Court to apply out of circuit decisions so as to disregard the settled law of the Eleventh

Circuit requiring a plaintiff exhaust <u>all</u> ERISA claims prior to bringing a lawsuit in federal court. *Mason v. Continental Group, Inc.*, 763 F.2d 1219, 1225-27 (11th Cir. 1985), *cert. denied*, 474 U.S. 1087 (1986).  For these reasons and those set forth below,  T. Rowe Price respectfully requests this Court grant it judgment on the pleadings.

## II.    ARGUMENT

### A.    Brown And Waller Have Not Pled An ERISA Breach of Fiduciary Duty Claim As To T. Rowe Price.

Plaintiffs misunderstand the nature of T. Rowe Price's arguments.[1]  T. Rowe Price does not assert that Brown and Waller have not met their minimum pleading burden under Fed.R.Civ.P.  8, but assuming all of the allegations of Plaintiffs 103 page Complaint are true, Plaintiffs do not state an ERISA fiduciary breach claim as to T. Rowe Price.  *See* Fed. R. Civ. P. 12(h)(2) ( "A defense of failure to state a

---

[1] Plaintiffs also fail to address several key arguments made in T. Rowe Price's Motion For Judgment on the Pleadings.  For example, Plaintiffs do not explain why they failed to allege in their Complaint the basis of T. Rowe Price's alleged fiduciary status, the alleged scope of T. Rowe Price's fiduciary duties, or the manner in which Plaintiff's allege T. Rowe Price breached those duties. (*See* Motion for Judgment on the Pleadings ("MJP") p. 3)  Nor do they explain how T. Rowe Price could be liable for following the directions of Plan participants or the Plans' named fiduciaries, when their complaint never alleges that T. Rowe Price followed an improper direction. (MJP p. 23) Nor do they explain how T. Rowe Price could have known of or been required to act on information Mirant and others were allegedly misrepresenting to or concealing from the Plans' participants and the public. (MJP p. 24)

claim upon which relief can be granted...may be made in any pleading permitted or

ordered under Rule 7(a), or by motion for judgment on the pleadings....").

> ...This requirement simply follows from the basic tenet of
> notice pleading—the "short" statement of the pleader's
> claim must also be "plain" and it must show that the
> pleader is entitled to relief....The notice pleading rules do
> contemplate a statement of circumstances, occurences,
> and events in support of the claim being presented. *City
> of Gainsville*, 488 F. Supp. at 1263.  Although the
> pleading need not list with "evidentiary specificity" the
> acts complained of, it must comprehend a "so-called
> *prima facie* case." *Quinonez*, 540 F.2d at 824.

*Ben Scheftall Distributing Co. v. Mirta de Perales, Inc.*, 791 F. Supp. 1575, 1579

(S.D. Ga. 1992).

For purposes of a Rule 12(c) motion, the factual allegations of Plaintiffs'

Complaint must be taken as true. *Horsley v. Feldt*, 304 F.3d 1125, 1132 (11th Cir.

2002).  However, the Court need not accept Plaintiffs' conclusory assertion that

T. Rowe Price is a fiduciary when that conclusion finds no legal or factual support

in the allegations of Plaintiffs' Complaint. *Oxford Asset Mgmt. v. Jaharis*, 297

F.3d 1182, 1188 (11th Cir. 2002) ("conclusory allegations, unwarranted deductions

of facts or legal conclusions masquerading as facts will not prevent dismissal"),

*cert. denied*, 124 S. Ct. 205 (2003).  Brown and Waller do not discuss *Oxford Asset

Mgmt.*, or other controlling Eleventh Circuit decisions, nor do they deny that they

rely on conclusory allegations, preferring instead to discuss how their complaint

favorably compares to several out-of-circuit district court opinions.  It is, of course,

settled law that District Courts within the Eleventh Circuit are bound by Eleventh

Circuit precedent. *Ramos v. Boehringer Manheim Corp.*, 896 F. Supp. 1213, 1215

(S.D. Fla. 1994); *Bonner v. Pritchard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Plaintiffs have failed to allege that T. Rowe Price is a fiduciary in

connection with the specific actions their Complaint alleges constituted a breach of

fiduciary duty. For purposes of evaluating whether the potential for fiduciary

liability even exists under ERISA Plaintiffs must first allege the extent to which

T. Rowe Price was a fiduciary to the Mirant Plans and "[t]he question then is

whether the Complaint contains sufficient allegations to support a claim that the

Defendants breached this fiduciary duty." *Lalonde v. Textron, Inc.*, 270 F. Supp.

2d 272, 277 (D.R.I. 2003) , *aff'd in part and vacated in part on other grounds by*,

*Lalonde v. Textron Inc.*, ____ F.3d ____, No. 03-2033, No. 03-2039, 2004 U.S.

App. LEXIS 8977, at ** 16-17, (1st Cir. May 7, 2004) (Affirming dismissal of

ERISA plan's directed trustee because even assuming "that the district court erred

in concluding that [the trustee] was a directed fiduciary . . . there is absolutely

nothing in the complaint which permits an inference that [the trustee] abused any

discretion it might have had.").

Plaintiffs go to great lengths to allege fiduciary misdeeds in their Complaint

as to other Defendants, but never causally, factually or legally connect these

alleged misdeeds to T. Rowe Price in any capacity, fiduciary or otherwise. T.

Rowe Price is not alleged to be a "named fiduciary," nor is it alleged it had any

responsibility to act as the Plan Administrator. (Complaint ¶¶ 82-83.) Plaintiffs do

not allege that T. Rowe Price had any responsibility for "determining the suitability

of and selecting every investment offered as an option under the plan, including

but not limited to Qualifying Employer Securities." (Complaint ¶ 84.) Nor do

Plaintiffs allege that T. Rowe Price had any authority to appoint members of the

America Benefits Committee or the Investment Review Committee. (Complaint

¶ 85.) T. Rowe Price is not identified as a "functional" fiduciary. (Complaint

¶ 86.) Finally, Plaintiffs do not identify T. Rowe Price as making representations

in a fiduciary capacity to participants as to the financial and business prospects of

Mirant or that T. Rowe Price made representations about the appropriateness of

investing in Mirant stock. (Complaint ¶¶ 87-89.) Plaintiffs' conclusory assertion

that T. Rowe Price acted in a fiduciary capacity with respect to the alleged

fiduciary breaches finds no support in the Complaint's factual allegations.[2]

Plaintiffs' protestations that fiduciary status is necessarily a fact intensive inquiry

do not withstand scrutiny inasmuch as they have failed to accomplish the required

---

[2] Of course, it is not surprising plaintiffs make no attempt to show how T. Rowe
Price was linked to or could have readily discovered any of the alleged deception
being practiced by Mirant corporate insiders and Plan officials. To do so would
undermine the seminal predicate of their ERISA claims--that Mirant was engaged
in a deliberate strategy of corporate and regulatory malfeasance that it hid from the
public, regulators and its own participants in an effort to inflate its value and
perpetuate its existence.

prerequisite to fact discovery of pleading an actual claim against T. Rowe Price for which this Court can grant relief. *Oxford Asset Mgmt.*, 297 F.3d at 1188. Instead, Brown and Waller make no factual allegations concerning T. Rowe Price's conduct but simply summarily conclude that as the nominal trustee, T. Rowe Price is fully liable to make good the Plans' losses as an alleged fiduciary of the Mirant Plans. As will be shown below, this tactic does not comport with settled law.

All fiduciaries of ERISA governed plans are not created equal. "ERISA recognizes that a person may be a fiduciary for some purposes and not [for] others." *Leigh v. Engle*, 727 F.2d 113, 133 (7th Cir. 1984). There are three ways a person can acquire fiduciary status under ERISA: (1) being identified as a named fiduciary in the plan; (2) being identified as a named fiduciary pursuant to a procedure specified in the plan, 29 U.S.C. § 1102(a)(2); (3) or by performing "fiduciary" functions. *Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec.*, 93 F.3d 1171, 1179 (3d Cir. 1996); 29 U.S.C. § 1002(21)(A); *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812 (2d Cir. 1987) ("[W]hether or not an individual or entity is an ERISA fiduciary must be determined by focusing on the function performed, rather than on the title held."). ERISA 3(21)(A) specifically provides:

> [A] person is a fiduciary with respect to a plan **to the extent** (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he

> renders investment advice for a fee or other compensation, direct or
> indirect, with respect to any moneys or other property of such plan, or
> has any authority or responsibility to do so, or (iii) he has any
> discretionary authority or discretionary responsibility in the
> administration of such plan.

29 U.S.C. 1002(21)(A) (emphasis added).  "This definition does not make a

person, who is a fiduciary for one purpose, a fiduciary for every purpose."

*Gelles v. Skrotsky*, 983 F. Supp. 1398, 1401 (M.D. Fla. 1997), *citing Johnson v.*

*Georgia-Pacific Corp.*, 19 F.3d 1184 (7th Cir. 1994).  Rather as the Supreme Court

explained in *Pegram v. Herdrich*, 530 U.S. 211 (2000):

> Thus, the statute does not describe fiduciaries simply as administrators
> of the plan, or managers or advisers.  Instead it defines an
> administrator, for example, as a fiduciary only 'to the extent' that he
> acts in such a capacity in relation to a plan.  29 U.S.C. § 1002(21)(A).
> **In every case charging breach of ERISA fiduciary duty, then, the
> threshold question is not whether the actions of some person
> employed to provide services under a plan adversely affected a
> plan beneficiary's interest, but whether that person was acting as
> a fiduciary (that is, was performing a fiduciary function) when
> taking the action subject to complaint.**

*Id.* at 225-226 (emphasis added).   "Clearly, discretion is the benchmark for

fiduciary status under ERISA.  Importantly, a trustee for a plan is not necessarily a

fiduciary for the entire plan."  *Maniace v. Commerce Bank, N.A.*, 40 F.3d 264, 267

(8th Cir. 1994).  In both their 103 page Complaint and their Opposition, Plaintiffs

ignore this fundamental tenet of ERISA, relying instead on the conclusory

assertion that because T. Rowe Price was designated for a time as the "trustee" of

the Mirant Plans it must therefore be fully liable to make good the Plan's alleged

losses. Because no facts as plead support T. Rowe Price's status as an investment

fiduciary, nor do any facts as pled support T. Rowe Price's status as a *"de facto"*

fiduciary, Brown and Waller's Complaint must be dismissed.

**B.      The Facts As Pled Do Not Support Brown And Waller's Fiduciary
         Breach Claim As To T. Rowe Price**

Brown and Waller concede, as they must, that T. Rowe Price was not named

as an investment fiduciary in their Complaint. (Opposition p. 14.) Thus, they

argue T. Rowe Price is a *"de facto"* fiduciary and, as such, can be held liable for

permitting investment in Mirant stock. (*Id.* at p. 27.) The facts as pled, however,

do not support this contention. The heart of Brown and Waller's Opposition

attempts to impose fiduciary liability on T. Rowe Price because in their view their

"Complaint details facts demonstrating the inherent imprudence of investment in

Company Stock through the Class Period. (See Complaint ¶¶ 90-131.)" (*Id.*

at 29.) However, if the Court examines this subpart of Brown and Waller's

Complaint titled "Facts Demonstrating Imprudence of Investment in Company

Stock During the Class Period," it will find a litany of accusations concerning

misleading communications concerning Mirant stock allegedly made by other

defendants, but it will never find any mention of T. Rowe Price. (Complaint ¶¶ 90-

131.) A review of the factual allegations contained therein, shows that they are

either conclusory or could not have put T. Rowe Price on notice that Mirant stock

was an imprudent investment. For example, paragraph 90 contains conclusory

observations by Plaintiffs concerning "basic facts about the characteristics and behavior" of all 401(k) plan participants. T. Rowe Price is not named, nor mentioned. Instead, at paragraph 91, Brown and Waller simply conclude all Defendants "knew or should have known these facts." The purported bad conduct by T. Rowe Price is not described. This same pattern repeats itself for the balance of Plaintiffs' Complaint. How is T. Rowe Price supposed to conduct its defense without notice of any facts giving rise to its potential liability? Is it enough for Brown and Waller to name "Joe Dokes" as a defendant, describe bad conduct by other defendants, and then summarily conclude Joe Dokes is personally liable?

Paragraphs 92 through 131 are no different. For example, "The IPO and Mirants' Illegal Manipulation of Prices in California During the Energy Crisis" are described at Paragraphs 92 through 98. Again, T. Rowe Price is not mentioned. Paragraph 92 alleges that Defendants mislead the investing public by concealing Mirant's participation in the "illegal manipulation of energy prices in California during 2000 and 2001." There is not even a whisper that T. Rowe Price had access to material, non-public information. Nor do Brown and Waller ever allege that T. Rowe Price "mislead" the public about Mirant's business activities." Paragraph 93 is a recitation of the "managed power grid system in California." T. Rowe Price is not mentioned. Paragraph 94 contains allegations of how Mirant allegedly used tactics to drive up the bidding price for energy. T. Rowe Price is not mentioned.

Paragraph 95 states that the class period begins on September 27, 2000, when "Southern issued an IPO for Southern Energy, Inc. stock, offering 19.7% of the company to the public." Again, there is no mention of T. Rowe Price. Is T. Rowe Price a proper defendant to a multi-million dollar fiduciary breach claim when it is never mentioned in Plaintiff's *prima facie* case?

Paragraphs 96 through 98 deal with Mirant's "UK operations", and, of course, do not mention T. Rowe Price. Multiple paragraphs recount purported duplicitous Mirant press releases made by other Defendants. Yet there is never one specific allegation that T. Rowe Price had any knowledge about a press release nor any explanation by Plaintiffs as to why T. Rowe Price should have been concerned about any particular news. (*See, e.g.,* Complaint ¶¶ 105-11.)

Paragraphs 99 through 131 launch into a purported description of Mirant's "energy trading" practices, T. Rowe Price is again missing in action. It is never mentioned nor is it ever alleged T. Rowe Price had any insider information about Mirant's business operations. Yet, it is on this basis that Brown and Waller would have this Court hold T. Rowe Price liable for the Plans' losses due to other defendants' acts of misleading the Plans' participants about investing in Mirant stock? Brown and Waller fail to explain how their conclusory allegations as to T. Rowe Price warrant a deduction of facts concerning other defendants or why

their legal conclusions masquerading as facts do not require dismissal. *Oxford Mgmt., supra,* 297 F.3d at 1188.

## C. Plaintiffs Cannot Amend Their Complaint By Pleading A Breach Of Fiduciary Duty Claim Against T. Rowe Price In Opposition To A Motion For Judgment On The Pleadings.

Recognizing the lack of sustainable allegations against T. Rowe Price in their Complaint, Plaintiffs' Opposition is replete with new allegations attempting to demonstrate that somehow T. Rowe Price could potentially be liable as an investment fiduciary of the Mirant Plans.[3] "It is axiomatic that a plaintiff cannot amend the complaint by arguments of counsel made in opposition to a motion to dismiss." *Kuhn v. Thompson,* 304 F. Supp. 2d 1313, 1321 (M.D. Ala. 2004);

---

[3] Among the new allegations found solely within Plaintiffs Opposition are that, (1) T. Rowe Price had discretionary authority and responsibility over investment of Plan assets (Opposition p. 4, 17); (2) T. Rowe Price was aware of the alleged imprudence of the Plans' continued investment in Mirant stock (*Id.*); (3) T. Rowe Price was a "*de facto*" fiduciary of the Mirant Plans (Opposition p. 14); (4) T. Rowe Price obeyed directions it knew contradicted "plan documents or the basic tenets of the ERISA statutes" (Opposition p. 17); (5) the Plan Documents grant discretion and responsibilities to T. Rowe Price concerning the investment of plan assets (*Id.*); (6) T. Rowe Price had a duty to "make sure that the directing fiduciary's directions are proper, in accordance with the terms of the plan and not contrary to ERISA" ( Opposition p. 24); (7) T. Rowe Price had "a duty to investigate the instructions given to them which they have reason to believe may be contrary to the plan document terms or ERISA" (Opposition p. 26); (8) T. Rowe Price "had a duty to evaluate "the Plans' continued investment in Mirant stock"; (9) T. Rowe Price knew or should have known of the named fiduciaries' "breach of its duties or of potential conflicts of an act or omission with ERISA or the plans, which threatens the interest of the plan participants and beneficiaries" (Opposition p. 27).

*Payne*, 173 F.R.D. at 540 ("[A] plaintiff cannot amend a complaint through statements in a brief.").

Plaintiffs fail to identify a single paragraph of their complaint which supports these new allegations against T. Rowe Price.  These new allegations find a basis in nothing more than generalizations from case law which has examined the sufficiency of other Complaints and found that under those particular circumstances the potential for liability might exist with respect to an ERISA plan's fiduciary. (Opposition p. 15)  Brown and Waller fail to explain how they can assert a breach of fiduciary duty claim against T. Rowe Price when they have not alleged any facts as to T. Rowe Price supporting these claims.

### D.   The Mirant Plan Documents Confirm T. Rowe Price's Role As A Directed Trustee Was Entirely Ministerial And Lacking Is Discretionary Control

In an effort to atone for the lack of substantive fiduciary allegations as to T. Rowe Price in their Complaint, Plaintiffs' Opposition attempts to classify T. Rowe Price as a general investment fiduciary.  This argument ignores the language of the controlling Trust Agreement between T. Rowe Price and Southern Energy Resources, Inc. for the Employee Savings Plan ("Trust Agreement") which states, "In performing its duties hereunder, the Trustee shall serve solely in the capacity of a directed trustee within the meaning of Section 403(a)(1) of ERISA." (Complaint Exh. D., ¶ 1.4 (MIR 0158).)  Plaintiffs choose not to acknowledge this provision of

the Trust Agreement or the provisions of the Mirant Plans which state the Trustee "shall have the sole responsibility for the administration of the assets of the Plan **as provided in the Trust Agreement[,]**" (Complaint Exh. A, ¶ 13.14 (MIR 0051); Exh. K, ¶ 13.14 (MIR 0291) (emphasis added)), and instead argue that out of context excerpts from the Mirant Plans' documents establish that T. Rowe Price exercised discretion or control over the Mirant Plans' assets to the requisite extent necessary to have potential liability as an investment fiduciary. (Opposition pp. 17-20.) However, the general provisions of the Mirant Plan documents identified by Plaintiffs do not support this finding.

First, Plaintiffs reference a statement in the Mirant Services Employee Savings Plan which states, "[t]he Americas Benefits Committee has retained T. Rowe Price to *assist in the operation and administration of the Plan[,]*" (Opposition p. 18), and erroneously announce that this sentence provides T. Rowe Price with the same level of fiduciary responsibility as the Plan's named fiduciary—the America Benefits Committee. In fact this reference does not even refer to T. Rowe Price Trust Company, but instead refers to a related recordkeeping entity—the T. Rowe Price Retirement Plan Services, Inc. More importantly, this argument ignores the legal standard for determining whether one is to be deemed a fiduciary for administering a 401(k) plan. The legal standard requires that one exercise "control" as opposed to merely "assisting in the

administration."[4]  Plaintiffs presumably contend that the "assisting" language in

the SPD somehow establishes that T. Rowe Price rendered more than just

ministerial administrative services to the Mirant Plans and, supports the contention

that T. Rowe Price exercises discretionary authority or control over the Savings

Plan.  This theory has been tried by ERISA plaintiffs before and resoundingly

rejected.  "[T]he mere exercise of physical control or the performance of

mechanical administrative tasks generally is insufficient to confer fiduciary status."

*Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 18, 21 (1st Cir. 1998)

("[i]mputing fiduciary status to those who gratuitously assist a plan's

administrators is undesirable in a variety of ways, and ERISA's somewhat narrow

fiduciary provisions are designed to avoid such incremental costs"); *Arizona State*

*Carpenters Pension Trust Fund v. Citibank*, 125 F.3d 715, 721-22 (9th Cir. 1997)

("[a] person or entity who performs only ministerial services or administrative

functions within a framework of policies, rules, and procedures established by

---

[4] The Department of Labor has also spoken on this point.  Section 2509.75-8 of the
Department of Labor Regulations provides that persons who perform the following
administrative functions, among others, shall not be deemed a fiduciary:
  (3)    Preparation of employee communications material;...
  (5)    Preparation of reports required by governmental agencies;...
  (7)    Orientation of new participants and advising participants of their
         rights and options under the plan;...
  (10)   Processing of claims; and
  (11)   Making recommendations to others for decisions with respect to plan
         administration.
29 C.F.R. 2509.75-8 (2004).

others is not an ERISA fiduciary"); *Baker v. Big Star Div. of Grand Union Co.*, 893 F.2d 288, 290 (11th Cir. 1989) (same).

Next, Plaintiffs contend because the Trust Agreement provides that "the Trust itself is to consist of 'sums of U.S. currency and such other property acceptable to the Trustee'" T. Rowe Price had "discretionary power over the contents of the Trust and its vehicles for investment." (Opposition p. 18 (emphasis omitted).) In reality, this standard trust language simply allows T. Rowe Price to decide it will not hold in trust a specific type of asset, such as race horses, art, or jewelry. Moreover, this provision applies *before* assets are placed in trust situs and, thus, relates to assets that are never even arguably within T. Rowe Price's authority and control. Plaintiffs' theory of what this language means would preclude any custodian the right to refuse acceptance of a particular asset class (regardless of legality) into the trust.

The next reference Plaintiffs point to as indicative of T. Rowe Price's discretionary authority or "control" over the Mirant Plans' assets, is not only presented out of context, but when placed in context supports the view that T. Rowe Price had absolutely no fiduciary investment responsibility. Plaintiffs allege T. Rowe Price had the "'*power to hold all or a portion of the Trust Fund uninvested* pending receipt of *clear and proper investment directions* or pending receipt of a contribution amount which is necessary to carry out an investment

direction.' (Millican Decl. at Exhibit D, MIR0158-159) (emphasis added)."
(Opposition pp. 18-19.)  When read together with the entire text of the referenced section it becomes clear that T. Rowe Price was limited to investing the Plans assets as directed and could rely on the protections afforded to a directed trustee by refusing to invest Trust assets pursuant to directions that were not clear or proper. This section states:

> 2.1  Investment Of The Trust Fund-In General.  The named Fiduciary shall be solely responsible for directing the Trustee as to the investment and deposition of the Trust Fund and shall have responsibility for the overall diversification of the Trust Fund.  The Trustee shall invest and reinvest the Trust Fund only as directed and the Trustee is specifically prohibited from having or exercising any discretion with respect to the investment of the Trust Fund.

> 2.2  Investment Powers of the Trustee.  **Subject to the limitations of Section 2.1**, the Trustee shall invest and reinvest the Trust Fund as directed, free from any limitations imposed by state law on investments of trust funds and without distinction between income and principal, in any investment approved by the Named Fiduciary, including equity or debt securities....  The Trustee shall have the power to hold all or a portion of the Trust Fund uninvested pending receipt of clear and proper directions or pending receipt of a contribution amount which is necessary to carry out an investment direction.

(Complaint, Exhibit D, MIR0158-159) (emphasis added).  In fact, this precise argument, that a trustee with the ability to refuse to follow directions that are not clear and proper has discretion or control over an ERISA plan sufficient to impose fiduciary liability, was rejected by the First Circuit in *Beddall v. State St. Bank & Trust Company*, 137 F.3d 12, 21 (1st Cir. 1998).

Finally, Plaintiffs argue that the "Master Plan Document itself demonstrates instances of discretionary authority and control over the management of Plan assets being granted to T. Rowe Price." (Opposition p. 19.) However, the general "Master Plan Document" provisions Plaintiffs cite regarding potential trustee authority cannot trump the express provision in both the Master Plan Document and the Trust Agreement that the Trust Agreement is the controlling document and its express terms limit T. Rowe Price's discretion and authority to that of a directed trustee. (Complaint Exh. D., Section 1.4 (MIR 0158); Exh. A, ¶ 13.14 (MIR 0051); Exh. K, ¶ 13.14 (MIR 0291).)

Plaintiffs ask this Court to read into their Complaint allegations that do not exist and read out of the controlling Trust Agreement all references confirming T. Rowe Price's limited role as the directed Trustee of the Mirant Plans. In doing so Plaintiffs ask the Court to ignore settled law in this Circuit and other Circuits regarding the limited role and corresponding limited liability of an ERISA directed trustee. In *Herman v. NationsBank Trust Co.*, 126 F.3d 1354 (11th Cir. 1997), the Eleventh Circuit explained:

> As we mentioned above, ERISA provides that trustees usually shall have exclusive authority and control over plan assets. However, ERISA allows a plan to allocate authority and control over plan assets to parties other than trustees, if that allocation fits one of three exceptions....
>
> If a plan falls under one of the three exceptions to exclusive trustee authority, then the responsibilities of the trustee are correspondingly

lessened. For example, if the plan provides that an investment manager has authority to control plan assets, then the trustee is not liable for losses caused by the investment manager. *See* [29 U.S.C. §§ 1103(a)(1);] § 1105(d)(1); *see also Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1219 (2d Cir. 1987). Or, if a plan gives participants' control over individual accounts pursuant to 29 U.S.C. § 1104(c)...the Trustee is not liable for any loss caused by any breach which results from the participant's exercise of control over those assets. *See*, 29 U.S.C. § 1104(c)(2)(B).

Finally, because of the third exception, to the extent that a plan allocates the authority to manage and control plan assets to a named fiduciary, the trustee becomes "subject to proper directions of such fiduciary which are made in accordance with the terms of the plan and which are not contrary to this chapter...." *Id.* § 1103(a)(1) (West 1985). In other words, insofar as a trustee acts at the direction of a named fiduciary in accordance with the terms of the plan and ERISA's requirements, he is not subject to the fiduciary requirement in Sec. 1104(a) to act prudently. *See Maniace v. Commerce Bank of Kansas City, N.A.*, 40 F.3d 264, 267 (8th Cir. 1994) (holding that directed trustee was not acting as a fiduciary in following named fiduciary's direction and did not need to weigh the merits of those directions).

*Id.* at 1361-1362 (some alteration in original).[5]

---

[5] *See also, Lalonde*, 2004 U.S. App. LEXIS 8977, at *17 (affirming dismissal of directed trustee where complaint lacked allegations sufficient to allege a breach of fiduciary duty claim); *Beddall*, 137 F.3d at 24 (dismissing trustee based on allegations of complaint which failed to state actionable claim under ERISA where trustee did not retain discretionary authority over plans assets); *In re McKesson HBOC, Inc. ERISA Litig.*, No. C00-20030 RMW, 2002 U.S. Dist. LEXIS 19473, at **35-40 (N.D. Cal. Sept. 30, 2002) (dismissing claims against directed trustee where plaintiffs merely sought to "piggy-back" their claims against the plans fiduciaries onto the directed trustee without any allegations that trustee knew investment directions received were imprudent, knew of accounting irregularities or knew that other plan fiduciaries were abusing their discretion by continuing to hold employer securities in the plan).

Brown and Waller have devoted most of their brief to dreaming up allegations about T. Rowe Price that they have never made and to describing out-of-circuit decisions dealing with failed motions to dismiss by sundry ERISA fiduciaries. They do not address the failings of their own complaint to articulate any *prima facie* claim as to T. Rowe Price nor do they explain how T. Rowe Price, given the paucity of facts as alleged by Plaintiffs in their Complaint violated the directed trustee standard established in *NationsBank*. Nowhere in Plaintiff's 103 page Complaint do they ever articulate in any way how T. Rowe Price's actions of following of the investment directions from participants and from the Plans' named fiduciary violated ERISA's requirements.

**E.    Plaintiffs Have Not Exhausted Administrative Remedies Provided by the Plan As Required in the Eleventh Circuit**

**1.    The Eleventh Circuit Requires Exhaustion of Administrative Remedies Prior to Filing a Lawsuit for Breach of Fiduciary Duty**

Plaintiffs' chose not to exhaust the Plan's administrative remedies prior to filing suit. Now, in order to get around the exhaustion requirement, Plaintiffs propose a novel theory. They argue that because they purport to bring a claim on behalf of the plan as a whole, they are not required to exhaust the administrative remedies provided by the Plan. Plaintiffs erroneously assert that "To Plaintiffs' knowledge, the Eleventh Circuit has yet to issue a ruling regarding the issue of exhaustion of administrative remedies for cases brought on behalf of a Plan based

on breach of fiduciary duty." (Opposition p. 39.)  Plaintiffs, however, concede on

the very next page that in *Mason v. Continental Group, Inc.*, 763 F.2d 1219 (11th

Cir. 1985), "[plaintiffs] did bring suit on behalf of the Plan." (Opposition p. 40

(emphasis added).)  Plaintiffs' focus on "plan-wide" relief simply seeks to obscure

the real issue—whether plaintiffs are required to exhaust administrative remedies

for both fiduciary breach (*i.e.* statutory claims) and benefit denial claims prior to

filing suit in the Eleventh Circuit.  Whether a plaintiff sues seeking plan-wide

relief under ERISA §502(a)(2) as opposed to "other appropriate equitable relief"

under  ERISA §502(a)(3) for an alleged breach of fiduciary duty is simply not a

factor in determining the necessity of exhaustion of administrative remedies in the

Eleventh Circuit.

Plaintiffs have apparently misunderstood, or intentionally misconstrued, the

law in the Eleventh Circuit.  While some circuits make a distinction between

exhaustion of administrative in ERISA cases alleging statutory violations as

opposed to a denial of benefits claim, the Eleventh Circuit does not.  It is settled

law in the Eleventh Circuit that a plan participant must exhaust administrative

remedies provided by an ERISA plan prior to filing any lawsuit under ERISA

§ 502(a).  *See Counts v. American Gen. Life & Accident Ins. Co.*, 111 F.3d 105,

108 (11th Cir. 1997) (the exhaustion requirement applies to all claims brought

under ERISA § 502(a) – including claims for breach of fiduciary duty under

ERISA § 502(a)(2) and ERISA § 502(a)(3), or "statutory violations" as they are

sometimes labeled), *citing Springer v. Wal Mart Associates' Group Health Plan*,

908 F.2d 897, 899 (11th Cir. 1990); *Mason*, 763 F.2d at 1225-27. This means that,

unlike some Circuits, exhaustion of administrative remedies is required prior to

bringing a lawsuit claiming breach of fiduciary duty.   Plaintiffs admit they did not

do so.

   Plaintiffs try to distinguish the case at bar by citing several cases dealing

with breach of fiduciary duty claims.[6]  Plaintiffs argue that "[i]n *none* of these

cases has the court ruled that plaintiffs' claims were barred for failure to exhaust

administrative remedies." (Opposition p. 35.)  Plaintiffs fail to point out that only

one of the cases they cite actually discusses exhaustion of remedies. While

Plaintiffs are accurate in determining that the Fourth Circuit case, *Smith v. Sydnor*,

184 F.3d 356, 366 (4th Cir. 1999), does not require exhaustion of remedies of

statutory claims, courts within the Eleventh Circuit are not bound to follow Fourth

Circuit rulings. *Bonner, supra,* 661 F.2d at 1209; *Ramos,* 896 F. Supp. at 1215.

---

[6] The single case Plaintiffs cite from within the 11th Circuit does not even address
the issue of exhaustion. *Hill v. Bellsouth Corp.,* ____ F. Supp. 2d ____, No. 1:02-
CV-2440-JOF, 2004 U.S. Dist. LEXIS 6045 (N.D. Ga. Mar. 30, 2004).  Nowhere
does the Court in *Hill v. Bellsouth Corp.* purport to overturn or challenge the clear
holding in *Counts v. American Gen. Life & Accident Ins. Co.,* 111 F.3d 105, 108
(11th Cir. 1997), *Springer v. Wal Mart Associates' Group Health Plan,* 908 F.2d
897, 899 (11th Cir. 1990), and *Mason v. Continental Group Inc.,* 763 F.2d 1219,
1225-27 (11th Cir. 1985), that exhaustion is required for all claims brought under
ERISA § 502(a).

"The law is clear in this circuit that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court." *Counts*, 111 F.3d at 108 (citations omitted). As the *Counts* court explained:

> Counts asks us to depart from this precedent [exhaustion requirement applies both to actions to enforce a statutory right under ERISA and to actions brought to recover benefits under a plan] and hold, along with several of our sister circuits, that exhaustion is not required for claims of statutory violation. . . . However, even if we agreed with Counts' position, this panel lacks the authority to overrule prior panel decisions of this court.

*Counts*, 111 F.3d 105, 109, *citing Bonner*, 661 F.2d at 1209. Courts within the Eleventh Circuit have, on numerous occasions, pointed out that they will not depart from the requirement of exhaustion of remedies for both breach of fiduciary duty and benefit denial claims, even where, as here, such claims are brought on behalf of a class of individuals. *See Mason*, 763 F.2d at 1221 (exhaustion not excused for class action claims seeking plan wide relief for an alleged breach of fiduciary duty under ERISA); *Perrino*, 209 F.3d at 1311 (exhaustion not excused for class action claims even when "employer fails to comply with all of ERISA's procedural requirements for establishing a reasonable claims procedure"); *In re Managed Care Litigation*, 185 F. Supp. 2d 1310, 1331-1333 (S.D. Fla. 2002) (exhaustion not excused for class action claims seeking plan wide relief for alleged violations of ERISA.)

Notwithstanding Plaintiffs' hyperbole, what they are attempting to do is to overwhelm Eleventh Circuit authority by invoking contrary decisions from other Circuit Courts. Plaintiffs provide no argument as to why this Court should disregard the settled law of the Eleventh Circuit.[7] (Opposition p. 37 n.22.) Nor do Plaintiffs explain why the Eleventh Circuit law which is directly on point should be overruled by decisions from other circuits, applying a different rule. Courts within the Eleventh Circuit are, of course, obliged to apply Eleventh Circuit law. *Bonner*, 661 F.2d at 1209.

### 2. Plaintiffs' Are Not Excused From Exhausting Administrative Remedies Under the Terms of the Plan

Plaintiffs argue that the language of the Mirant Plans do not provide plan participants with administrative relief, and therefore they were not required to exhaust administrative remedies. This argument is legally unsupportable. A plan participant is not excused from exhausting administrative remedies even where a plan fails to include a description of formal claims procedures. *Perrino v. Southern Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1311 (11th Cir. 2000). According to *Perrino*, "the exhaustion requirement for ERISA claims should not be excused for technical violations of ERISA regulations that do not deny plaintiffs meaningful

---

[7] Plaintiffs argue that "a closer examination of the cases cited by Defendant reveals that they are all readily distinguishable." (*See* Opposition p. 34 n.20.) However, the cases Plaintiffs discuss stand for exactly the proposition Defendants cited them for – *i.e.* that every circuit requires exhaustion of remedies under ERISA.

access to an administrative remedy procedure through which they may receive an adequate remedy." *Id.* at 1317-18.[8]  Moreover, Plaintiffs' assertion that the Plan itself allows Plaintiffs to file a lawsuit without exhausting administrative remedies is at best misleading.  Plaintiffs cite to a sentence of the Plan which states:  "If the plan fiduciaries are misusing the Plan's money... you have the right to file suit in the federal court, or to request assistance from the U.S. Department of Labor." (*See* Complaint, Exh. C (MIR 0122).)  However, Plaintiffs neglect to mention that the sentence immediately preceding the sentence they quote states:  "If you are improperly denied a benefit from the Plan, in full or in part, you have a right to file suit in federal or state court."  (*See Id.*)  Would Plaintiffs also argue that because of this statement, they would not be required to exhaust administrative remedies prior to filing a claim for benefits under ERISA § 502(a)(1)(B)?  Clearly not.

---

[8] Plaintiffs are also not excused from exhausting administrative remedies because they did not plead futility nor have they made "a clear and positive showing of futility" as is required by the Eleventh Circuit before exhaustion will be deemed futile. *Springer,* 907 F.2d at 901; *Kirkland v. SSL Ams., Inc.,* 263 F. Supp. 2d 1326, 1351 (M.D. Ala. 2003) ("A plaintiff must make a 'clear and positive showing of futility' before the court may suspend the exhaustion requirement.") (citation omitted). *Variety Children's Hosp. v. Century Medical Health Plan,* 57 F.3d 1040, 1042 & n.2 (11th Cir. 1995) (dismissal of plaintiff's ERISA claim proper where plaintiff "neither pleaded nor recited facts showing that it had exhausted its administrative remedies under the plan" or pleaded "that exhaustion is waived because it would be futile"); *Leggett v. Provident Life & Accident Ins. Co.,* No. 6:02-cv-1032-Orl-22KRS, 2004 U.S. Dist. LEXIS 1866, at *45-46 (M.D. Fla. Feb. 9, 2004) ("[I]n order to raise the futility exception, [plaintiff] was required to have pled it.")

Finally, Plaintiffs point out that the decision whether to apply the exhaustion requirement is up to the district court's sound discretion. (Opposition pp. 40, 41). While district courts do have discretion, the Eleventh Circuit notes that "we apply the exhaustion requirement strictly and recognize narrow exceptions only based on exceptional circumstances." *Perrino*, 209 F.3d at 1318; *see Counts*, 111 F.3d at 108; *Springer*, 908 F.2d at 899; *Curry v. Contract Fabricators, Inc. Profit Sharing Plan*, 891 F.2d 842, 846-47 (11th Cir. 1990). Plaintiffs failed to plead or assert any "exceptional circumstances" warranting excusal from the exhaustion requirement. Simply concluding, as Plaintiffs do, that "given the nature of the claims, a requirement that any administrative remedies be exhausted (even if one existed) would not be warranted" does not even come close to the standard of requiring "exceptional circumstances" to excuse exhaustion. (Opposition p. 41.) The law is clear, "if a reasonable administrative scheme is available to a plaintiff and offers the potential for an adequate legal remedy, then a plaintiff must first exhaust the administrative scheme before filing a federal suit." *Perrino*, 209 F.3d at 1318. Plaintiffs have failed to do so.

## III.  **CONCLUSION**

For all of the foregoing reasons, T. Rowe Price respectfully requests this Court grant Judgment on the Pleadings in its favor.

Respectfully submitted,

Dated: _May 26, 2004_    By: _Daniel M. Klein (cdb)_

Daniel M. Klein, Esq.
Georgia Bar No. 425037

Buckley & Klein, LLP
Atlantic Center Plaza, Suite 1100
1180 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 781-1100
Fax: (404) 781-1101

Counsel for Defendant
T. Rowe Price Trust Company, Inc

James P. Baker (Calif. Bar No. 096302-*pro hac vice*)
Heather L. Reinschmidt (Calif. Bar No. 217977-*pro hac vice*)
Orrick, Herrington & Sutcliffe LLP
400 Sansome Street
San Francisco, CA 94111
Telephone: (415) 392-1122
Fax: (415) 773-5759

# CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that the foregoing has been prepared in

Times New Roman (14 point) font, as approved by the Court in LR 5.1B.

BUCKLEY & KLEIN, LLP

Daniel M. Klein
Georgia Bar No. 425037

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

IN RE MIRANT CORPORATION
ERISA LITIGATION

)    CIVIL ACTION
)    NO.:1:03-CV-1027-BBM
)
)

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a copy of the foregoing **REPLY**

**MEMORANDUM IN SUPPORT OF DEFENDANT T. ROWE PRICE**

**TRUST COMPANY, INC.'S MOTION FOR JUDGMENT ON THE**

**PLEADINGS** by United States Mail with sufficient postage affixed to ensure First

Class delivery to:

Lynn Lincoln Sarko
Keller Rohrback
1201 Third Avenue, Suite 3200
Seattle, WA 98101

Richard S. Schiffrin
Schriffrin & Barroway
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004

Joshua A. Millican
Office Of Joshua A. Millican
44 Broad Street NW, Suite 400
Atlanta, GA 30303

Gary Gotto
Keller Rohrback
3101 North Central Avenue, Suite 900
Phoenix, AL  85012-2600

Howard Douglas Hinson
Alston & Bird
1201 West Peachtree Street, One Atlantic Center
Atlanta, GA  30309-3424

J. Kirk Quillian
Troutman Sanders
600 Peachtree Street NE, Suite 5200
Atlanta, GA  30308-2216

Dated: _____, 2004.

_____
Daniel M. Klein, Esq.
Georgia Bar No. 425037

Buckley & Klein, LLP
Atlantic Center Plaza, Suite 1100
1180 West Peachtree Street
Atlanta, GA  30309
Telephone:  (404) 781-1100
Fax:  (404) 781-1101

Counsel for Defendant
T. Rowe Price Trust Company, Inc.